(101 South. 243)

No. 24527.

## RUSH v. TOWN OF FARMERVILLE et al.

(April 30, 1924. Rehearings Denied by the Whole Court June 6, 1924.)

*(Syllabus by Editorial Staff.)*

**1. Municipal corporations &#10132;747(3)—Municipality not liable for misfeasance or nonfeasance of police.**

A municipality or town corporation is not liable in damages for the misfeasance or nonfeasance of its police appointed, or its marshal elected, under the provisions of its charter, in the exercise of governmental functions conferred upon it exclusively for public purposes.

**2. Homicide &#10132;18(1), 62—Connivance in crime resulting in homicide is murder; participation in minor crime is manslaughter.**

Since the intention to take human life is not an essential element of murder or manslaughter, all parties to a conspiracy are guilty of murder, if a homicide is committed in carrying out a conspiracy to commit any felony, and all are guilty of manslaughter if a felonious homicide be committed in carrying out a conspiracy to commit a less serious offense, not naturally tending to the destruction of human life.

**3. Death &#10132;47—Petition held to state cause of action for death at hands of mob.**

In action for death, petition alleging that some of the defendants and minor unemancipated children of others conspired to disturb the peace, to tear down private property, to obstruct sidewalks and doors to business establishments, and to discharge firearms, and that the decedent was shot by a member of the mob while protesting against the lawless conduct, *held* sufficient to state a cause of action under Rev. Civ. Code, arts. 2318, 2324.

**4. Death &#10132;43—That some members of mob were not made defendants no defense.**

In action against members of a mob for death of person shot by one member, the fact that there were other members of the mob not known to plaintiff against whom no suit, had been brought was no defense under Rev. Civ. Code, arts. 2094, 2095.

**5. Evidence &#10132;157(8)—Transcript of stenographic notes of testimony at coroner's inquest held inadmissible.**

Transcript of stenographic notes of testimony of defendants taken at coroner's inquest with affidavit of stenographer attesting correctness *held* inadmissible, since the stenographer herself should have been produced as a witness, though procès verbal of inquest was lost or mislaid or not recorded under Act No. 27 of 1875.

**6. Trespass &#10132;20(3)—Proof of possession sufficient as against trespasser.**

Wrongdoers, without color of title, cannot compel parties in possession as owners to exhibit their titles; proof of actual possession as against trespasser being sufficient.

**7. Death &#10132;21—Self-defense held not available.**

Where a mob was engaged in discharging firearms, in rolling wagons in front of places of business, and taking down and removing business signs, the fact that barber shop proprietor appeared in front of his shop armed with a pistol to protest against the removal of his sign did not preclude his dependent mother from recovering damages for his death after being shot by a member of the mob; self-defense not being available.

**8. Conspiracy &#10132;1—"Conspiracy" defined.**

"Conspiracy" is a combination of two or more persons to do something unlawful whether as a means or as an ultimate end.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conspiracy.]

**9. Conspiracy &#10132;13—Act of one conspirator is act of all.**

A conspiracy having been established, the act done by one in furtherance of the unlawful decision is the act of all.

**10. Conspiracy &#10132;14—All who co-operated in, advised, or assisted in accomplishment of common design are liable for damages.**

When a tort is perpetrated through the instrumentality of combination or conspiracy, the party wronged or injured may look beyond the actual participants and join with them as defendants all who co-operated in, advised, or assisted in the accomplishment of the common design; cotrespassers being bound in solido.

**11. Parent and child** ⊙⊶13(2)—**Minor not necessary party in action against father for damages committed by minor child residing with him.**

In action against father for damages committed by minor child residing with him, the minor is not a party to the suit; the father being the actual defendant in interest.

**12. Evidence** ⊙⊶317(12)—**Admissions against interest by minor not admissible against father sued for damages caused by minor.**

In action against father for damages caused by minor child residing with him, admissions against interest made by the minor are not admissible against the father.

**13. Death** ⊙⊶99(5)—**$5,000 allowed to mother for death of son.**

Seventy year old mother unable to work and dependent on deceased *held* entitled in action for his death to damages in the sum of $5,000.

Appeal from Fourth Judicial District Court, Parish of Union; J. B. Crow, Judge.

Action by Mrs. Sarah M. Rush against the Town of Farmerville and others. Judgment of dismissal, and plaintiff appeals. Reversed and rendered.

S. D. Pearce and J. B. Holstead, both of Ruston, for appellant.

H. G. Fields and J. Walter Elder, both of Farmerville, for appellees.

By Division B, composed of Justices DAWKINS, LAND, and LECHE.

LAND, J. Plaintiff is the venerable mother of John E. Rush, who was killed on the night of December 31, 1917, while deceased was attempting to protect his place of business, a barber shop in the town of Farmerville, against forcible acts of trespass by a mob.

Deceased was unmarried. Plaintiff is his sole heir, resided with him, and was dependent upon him for support at the time of his death. Petitioner sues the marshal and the town of Farmerville, and the members of the mob, to recover against defendants in solido damages in the sum of $10,000, for loss of support and for deprivation of the companionship and love of her son, occasioned by his death.

[1] 1. Exceptions of no cause of action were filed by all defendants. The liability of the marshal and town of Farmerville is predicated upon the alleged refusal and failure of the marshal to protect the property of Rush from depredations at the hands of the mob, after that officer had been appealed to for such protection. A municipality or town corporation is not liable in damages for the misfeasance or nonfeasance of its police appointed, or of its marshal elected, under the provisions of its charter, in the exercise of governmental functions conferred upon it exclusively for public purposes. Stewart v. City of New Orleans, 9 La. Ann. 461, 61 Am. Dec. 218; City of New Orleans v. Kerr & Gally, 50 La. Ann. 413, 23 South. 384, 69 Am. St. Rep. 442.

The exception of no cause of action was therefore properly sustained as to these defendants.

The petition, however, clearly alleges a conspiracy upon the part of the other defendants to disturb the peace and order of the town of Farmerville, to tear down, demolish, and mutilate private property of the citizens of the town, to obstruct the sidewalks and entrances to the front doors of business establishments, shops, and offices, and to discharge firearms in the streets.

It is specially alleged that, in pursuance of said conspiracy, defendants rolled a wagon upon the sidewalk in front of the barber shop owned by deceased, and immediately under his barber sign, and made two attempts to tear down said sign; that the mob withdrew temporarily after the first attempt, but thereafter returned, with ranks recruited, and armed with deadly weapons, which were drawn during the second visit, and while the second attempt to tear down the sign was being made; and that, at this juncture, and while deceased was protesting against the

lawless conduct of the mob, he was shot down by a pistol in the hands of J. Ben Taylor and by a shotgun in the hands of Marshall Taylor. The petition avers that the other defendants named therein, to wit, J. W. Stancil, Leo Hill, Eugene Crider, minor son of William Crider, Raymond Clarke, minor son of J. D. Clarke, W. J. Turnage, Jr., minor son of W. J. Turnage, and Raymond Turnage, were parties to the conspiracy and were present, aiding, and abetting in the killing.

The petition also charges the responsibility of the fathers of said minors, alleged to be unemancipated, and living with them, for their unlawful acts.

Article 2324 of the Revised Civil Code is to the effect that—

"He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act."

[2] It is also well settled that, as the intention to take human life is not an essential element in the crime of murder or manslaughter, all of the parties to a conspiracy are guilty of murder, if a homicide be committed in carrying out a conspiracy to commit any felony, and all of the conspirators are guilty of manslaughter if a felonious homicide be committed in carrying out a conspiracy to commit a less serious offense, not naturally tending to the destruction of human life. State v. McCollum, 135 La. 432. 65 South. 600.

The petition clearly alleges that the defendants were the aggressors and were in fault in bringing on the difficulty which resulted in the homicide, and that deceased was killed without any legal justification or excuse, and in the prosecution of an unlawful conspiracy. The father, or, after his decease, the mother, is responsible for the damages occasioned by their minor or unemancipated children residing with them. R. C. C. art. 2318.

[3] The petition therefore discloses a cause of action for damages for the death of deceased.

[4] 2. The exception of nonjoinder pleaded by defendants specifically named in the petition, and based upon the ground that the petition disclosed the fact that there were other members of the mob who were unknown to plaintiff, and against whom no suit had been brought, is without merit.

A creditor may apply to any one of the debtors in solido he pleases, without the debtors having a right to plead the benefit of division. R. C. C. art. 2094.

A suit brought against one of the debtors in solido does not bar the creditor from bringing suits on the same account against the others. R. C. C. art. 2095. The joinder of all the parties in the same suit by the plaintiff was therefore unnecessary. The exception of nonjoinder was properly overruled.

3. The plaintiff inadvertently designated J. W. Stancil in her petition as a member of the mob. The citation was served on J. W. Stancil, Jr., the proper party. The exception to the citation tendered by J. W. Stancil, Jr., has passed out of the case, as plaintiff amended her petition by making him a party defendant, and prayed for citation and service upon him, and for judgment against him in solido with the other defendants.

[5] 4. On the trial of the case, plaintiff offered the transcript of the stenographic notes of the testimony of certain defendants in this suit, who had testified as witnesses before the coroner's inquest, with the affidavit of the stenographer attached to said transcript attesting its correctness. The offering was objected to and excluded by the trial judge. The ruling was correct. The stenographer could have been called by plaintiff as a witness in the case, if she heard and remembered the testimony of the witnesses at the inquest, even had the testimony, as reduced to writing by the coroner, been avail-

able. A fortiori, the same rule must apply when the procès verbal of the inquest returned by the coroner has been lost or mislaid, or has not been recorded by the clerk, as required by Act 27 of 1875.

In the case of State v. Lazarone, 130 La. 6, 57 South. 534, we said:

"While the testimony, as reduced to writing by the coroner, may be the most reliable evidence of what that testimony was, it is not the best evidence in the sense of the rule of best evidence; or, in other words, the testimony of the other persons who were present when the testimony was given, and who heard and remembered it, is not secondary evidence, but is primary evidence; and, as such, is equally admissible with the written report of the testimony. 30 Am. & Eng. Enc. p. 1100; State v. Farrier, 114 La. 579, 38 South. 460."

The ex parte notes of the stenographer were therefore inadmissible, as the defendants were entitled to have the stenographer produced and sworn as a witness, in order that they might cross-examine her and test the correctness of her statements as to what the defendants testified to before the coroner.

5. The original deed to John E. Rush of the barber shop property had been mislaid at the date of the trial of this suit. The evidence was not sufficient to establish its loss, and the trial judge excluded a certified copy of the recorded deed for this reason. However, the fact of existence of the original deed and the actual possession of this property by Rush at the date of the homicide is a sufficient showing of prima facie title as against defendants, who are mere trespassers without right.

[6] Wrongdoers, without color of title, cannot compel parties in possession as owners to exhibit their titles. Proof of actual possession as against the trespasser is sufficient. McCutcheon v. Angelo, 14 La. Ann. 34; Daigre v. Levin & Co., 48 La. Ann. 414, 19 South. 336; Fanchonette v. Grange, 5 Rob. 510.

6. This brings us to the consideration of the case upon its merits. Defendants in their answer plead that deceased was killed in self-defense by J. Ben Taylor, a member of the mob, and that they were in no way responsible therefor. The defendant J. Ben Taylor sets up in his answer that he was acting "in the defense of his life and within his legal rights."

The testimony shows that at midnight, December 31, 1917, a mob consisting of 20 or more persons was engaged in the town of Farmerville in discharging firearms in the streets, in rolling wagons upon the sidewalks in front of places of business, and in taking down and removing business signs, etc. The deceased owned and operated a barber shop in the middle of a business block in said town, and at 12 o'clock on the night of December 31, 1917, a mob pushed a wagon upon the sidewalk in front of his shop, over his strenuous protest. The mob dispersed without further action, some of its members going to the drug store of the defendant J. W. Stancil, Jr., in the same block, while other members assembled in front of the drug store, or in the street near by. About 15 minutes after the wagon had been placed upon the sidewalk in front of the barber shop of the deceased, the mob returned for the purpose of taking down the sign suspended over the shop, and Rush, the proprietor, was killed by J. Ben Taylor in the difficulty that ensued. The defendant J. Ben Taylor admits in his testimony that he, J. W. Stancil, Jr., and Eugene Crider were the first of the mob that came from the drug store to the place of business of deceased. Stancil admits that he was a member of the mob that had rolled the wagon upon the sidewalk. The members of the mob while at Stancil's drug store and at other places conspired to take down the sign, and they laughed at the anger displayed by deceased when he objected to the wagon being placed upon the sidewalk in front of his shop.

The testimony shows with clear legal cer-

tainty that practically the same members of the mob that had moved the wagon upon the sidewalk returned to take down the sign, and that they were all aware of the fact that the deceased had protested vigorously and angrily against the obstruction of the sidewalk in front of his place, and had requested the removal of the wagon in vain. In the face of these facts, each member of the mob knew that by returning to the scene 15 minutes later, a difficulty in all probability would be precipitated, and that a tragedy might be enacted. That the mob returned to the barber shop, knowing the danger, and were prepared to take down this sign at all hazards, and intended to use deadly weapons if resisted in their lawless purpose, is clearly proven by the evidence, and especially by the admissions of J. Ben Taylor and J. W. Stancil, Jr., the leaders of the mob, that they left the drug store armed with pistols; Taylor carrying his pistol in his hand. Both Taylor and Stancil had pistols in their hands after they had climbed into the wagon in order to reach and remove the sign. Some one in the crowd was also armed with a shotgun, as the dead body of the owner of the barber shop bore the evidence not only of a wound from a pistol bullet, but also of wounds from squirrel shot in the face and side of the head.

It is shown by the testimony that deceased did not come out of his barber shop until Taylor and Stancil and Crider had climbed into the wagon to take down his sign. His property rights were threatened at the time by the forcible invasion of a mob, two of whose members were standing in the wagon in front of his place of business with drawn weapons in their hands, and a coconspirator with a shotgun was lying in wait in the crowd.

[7] The deceased came from his place of business armed with a pistol, in defense of his life and property, as he had a perfect legal right to do, and his being shot down under these circumstances is wholly without legal justification or excuse. The members of the mob, by taking the law into their own hands, became the aggressors, and were at fault in bringing on the difficulty.

In the case of Nicol v. I. C. R. Co., 44 La. Ann. 816, 11 South. 34, we said:

"The law jealously protects the possession of property against invasion and violence. It punishes with severity the trespasser, although he may believe he has some right which he can enforce by violence. Public order and the highest interests of 'society require that no violence shall be done to one in peaceable possession of property. As against the lawful owner, the possession of immovable property must be protected against the unlawful disturbance of his possession. The acts of the defendant were without the slightest palliation, or excuse."

The legal proposition that he who is in fault and sues for damages resulting therefrom cannot recover for the injuries inflicted upon him, although the perpetrator was not justified in law in his conduct, is pregnant with the affirmative that when the injured party is free from fault he may sue the party causing the damage, and his heirs may likewise sue, in the event of his death by wrongful act. When a band of conspirators, united for unlawful purposes, and armed with deadly weapons, invade the property rights of a citizen of this state, openly and defiantly, and, when force is resisted by equal force, slay the owner of the property, the charge that the owner was at fault, and that his heirs are therefore debarred from right of recovery of damages for his death, has not the slightest foundation upon which to stand, either in law or in equity, or in good morals. To so hold would be for this court to grant immunity to mobs for acts of vandalism, and of violence, and to place upon such lawless acts the seal of judicial approval, in direct contravention of the constitutional guaranty of protection to the citizen in the

156 LA.—28

enjoyment of his life and property, secured to him by the supreme law of the land.

[8] A "conspiracy" is a combination of two or more persons to do something unlawful, either as a means or as an ultimate end. State v. Slutz, 106 La. 182, 30 South. 298.

[9, 10] The conspiracy having been sufficiently established, the act done by one in furtherance of the unlawful design is, in law, the act of all. State v. Griffin, 48 La. Ann. 1409, 20 South. 905. When a tort is perpetrated through the instrumentality of a combination or conspiracy, the party wronged and injured may look beyond the actual participants in committing the injury, and join with them, as defendants, all who co-operated in, advised, or assisted in the accomplishment of the common design, for cotrespassers are bound in solido. Kernan v. Humble, 51 La. Ann. 389, 25 South. 431.

The transcript is replete with proof that the mob on the night of December 31, 1917, by common consent and with common co-operation, had engaged in numerous acts of moving wagons upon the sidewalks, discharging firearms in the street, and removing signs from shops and stores. These acts of trespass and disturbances of the public peace and order were general in the town of Far-merville. The place of business of the deceased was no exception; it was an object of the common design of the mob.

The defendant Raymond Turnage and the defendant Marshall Taylor, minor son of J. G. Taylor, are the only defendants against whom there is no proof of complicity in the conspiracy, charged by plaintiff. J. Ben Taylor and Marshall Taylor were indicted and tried for the murder of John E. Rush and acquitted.

[11, 12] Plaintiff offered on the trial of this suit testimony to prove that Marshall Taylor had sworn at the criminal trial that he fired a shot at Rush, the purpose being to bind J. G. Taylor, the father, by such testimony as an admission against interest. The law makes the father personally liable in damages for the offenses and quasi offenses of his minor child, residing with him. In suits of this character, the minor is not a party to the suit; the father being the real litigant and actual defendant in interest. A judgment, if obtained, must necessarily be satisfied and paid by the seizure and sale of the property of the father. The admissions against interest made by the minor are therefore not admissions made by a litigant. It is clear that in such a suit the minor could not confess judgment, as he is not the defendant in the case. Such admissions, therefore, in suits like the present one, are not binding upon the father; at best, they are mere hearsay statements, and are inadmissible. A minor may be a witness in such a suit, but his testimony must be governed by the same rules of evidence applicable to any other witness. Toca v. Rojas, 152 La. 320, 331, 93 South. 108.

J. B. Clarke, the father of the alleged minor Raymond Clarke, is sued for damages in this case. The undisputed testimony of Clarke is to the effect that his son was 21 years of age in September, 1917. The homicide was committed December 31, 1917, after defendant's son had arrived at the age of majority. The defendant Clarke is therefore not responsible in damages for any wrongful connections which his son may have had with the conspiracy alleged in this case. Raymond Clarke, being a major, at the time, is solely liable for the offenses or quasi offenses which he may commit.

The defendants J. G. Taylor, father of the minor Marshall Taylor, J. B. Clarke, father of the alleged minor Raymond Clarke, and Raymond Turnage are therefore eliminated from the case.

The remaining defendants are William Crider, father of the minor Eugene Crider;

W. J. Turnage, father of the minor W. J. Turnage, Jr.; and Leo Hill.

The testimony of the witness Ed. Aulds is to the effect that W. J. Turnage, Jr., and Camp Simmons told Rush that they were going to take down the sign. However, we have failed to find any testimony in the record to show that W. J. Turnage, Jr., was present, either when the wagon was moved upon the sidewalk, or at the time of the attempt to take the sign down. Plaintiff has failed to connect him with the conspiracy between defendants directed against the place of business of deceased.

This is a grave case, and the proof must necessarily be clear and convincing, before any liability can be judicially decreed. We are of the opinion, under the circumstances of the case, that if any such statement was made, it was more in jest than seriously intended.

The testimony, however, as to Eugene Crider, minor son of William Crider, is strong and convincing. He was with the main leaders of the mob, J. Ben Taylor and J. W. Stancil, at the drug store, and left with them to assist in taking down the sign.

Several witnesses testify that he was present at the time of the shooting, standing close to the wagon. Stancil admits that he and J. Ben Taylor were in the wagon, and states that "somebody else was back in this end of the wagon; I don't know who it was." The witness Andrew Miller testifies positively that Taylor, Stancil, and Eugene Crider "climbed up on the wagon." The defendant Leo Hill assisted in moving the wagon upon the sidewalk in front of deceased's barber shop. He was at the drug store with Stancil and J. Ben Taylor, and was in the crowd at the edge of the sidewalk in front of the barber shop when the shooting occurred.

These facts are sufficient to fix liability upon the defendant William Crider, father of the minor Eugene Crider, and upon the defendant Leo Hill, as the conspiracy charged is fully established.

[13] The plaintiff is the aged mother of the deceased. She was approaching her seventieth birthday at the date of the trial of this case in May, 1920. She is physically unable to work and is dependent. The deceased was her main support among three sons, one of whom is afflicted, and the other is married and has a family for which he must provide. The afflicted son is not mentally sound, and resides with his married brother, whose means are moderate. The plaintiff has been a widow for 30 years. Taking into consideration her feeble condition and lack of income, and the serious loss to her in her declining years of the companionship, love, and support of her deceased son, we are of the opinion that plaintiff should be awarded damages in the sum of $5,000, to meet the ends of justice in this case.

The judgment of the lower court rejecting plaintiff's demands and dismissing her suit is erroneous.

For the reasons assigned, the judgment appealed from is annulled and set aside. It is now ordered that there be judgment in favor of plaintiff and against the defendants, J. Ben Taylor, J. W. Stancil, Jr., Leo Hill, and William Crider, father of the minor Eugene Crider, in solido, in the sum of $5,000, with legal interest from judicial demand until paid. It is further ordered that plaintiff's demand be rejected, and that plaintiff's suit be dismissed at her cost as against the defendants J. G. Taylor, father of the minor, Marshall Taylor, Raymond Clarke, and W. J. Turnage, father of the minor, W. J. Turnage, Jr. The defendants cast to pay all other costs.

DAWKINS, J., concurs in the decree.

Rehearings refused by the WHOLE COURT.