277 So.2d 223 (1973)
Wilbert TABB, Plaintiff-Appellee,
v.
James Christopher NORRED et al., Defendants-Appellants.
No. 4096.
Court of Appeal of Louisiana, Third Circuit.
April 25, 1973.
Rehearing Denied May 24, 1973.
Writ Refused June 29, 1973.
*224 McBride & Brewster by Norman Foret and Piccione, Piccione & Wooten by Peter C. Piccione, Lafayette, for defendants-appellants.
Louis M. Corne and J. Minos Simon, Lafayette, for plaintiff-appellee.
Before SAVOY, HOOD and CULPEPPER, JJ.
HOOD, Judge.
Wilbert Tabb instituted this suit for damages for personal injuries sustained by him when he received a bullet would from a pistol fired by James Christopher Norred, Jr., a minor. Plaintiff alleges that the shooting occurred pursuant to a conspiracy between Norred and Nicholas Lee *225 Vincent, also a minor. The suit was instituted against young Norred, his father and American Security Insurance Company, liability insurer of the Norreds. Also named as defendants are Nicholas Lee Vincent, his father, Louis D. Vincent, and State Farm Fire and Casualty Company, the liability insurer of the Vincents.
Plaintiff entered into a compromise settlement with the Norreds and American Security Insurance Company prior to the trial, and the suit was dismissed with prejudice as to those defendants, reserving to plaintiff all of his rights against the remaining defendants.
The case was tried by jury, with the result that a general verdict was rendered in favor of plaintiff for $300,000.00. A judgment was then rendered and signed by the trial judge in favor of plaintiff, and against State Farm Fire and Casualty Company, Louis D. Vincent and Nicholas Lee Vincent, condemning defendants "jointly, severally and in solido" to pay to plaintiff the amount specified in the verdict, with the provision that "as to Nicholas Lee Vincent the principal amount of said judgment hereby is reduced to one-half thereof as the result of his right of contribution from his co-tort-feasor, James Christopher Norred, Jr."
Defendants, Nicholas Lee Vincent, Louis D. Vincent and State Farm, have appealed. Plaintiff answered the appeal praying that the amount of the award be increased.
A number of issues are presented. The one we will consider first is whether the facts presented here constitute sufficient grounds for plaintiff to recover damages from the Vincents under the provisions of Article 2324 of the Louisiana Civil Code.
The shooting occurred at about 1:00 A. M. on November 6, 1970. Plaintiff was a deputy sheriff in Lafayette Parish, and he was on duty at that time. Shortly before the shooting took place he received a telephone call from someone who lived near the Broadmoor Elementary School, in Lafayette, advising that the caller had heard glass breaking and had seen lights turned on and off in the school. Immediately after receiving that call plaintiff and two other deputies went to the school to investigate.
Upon their arrival at the school building, the officers apprehended and took into their custody a young man named Darrell Patterson, who was wandering on the school grounds outside the building. They discovered that an outside window of the structure had been broken, and they thereupon announced twice in voices loud enough to be heard by persons in the school that they were police officers, that the building was surrounded, and that anyone in the building was ordered to come out. Shortly thereafter the officers saw young Vincent inside the unlighted building near the broken window. Plaintiff and another officer managed to slip up on and grab Vincent through the window and to drag him out of the building, where a struggle ensued. During the course of the struggle a 22 caliber pistol which Vincent had in his hand was fired, but no one was struck by the bullet, and Vincent eventually was subdued. Vincent was then disarmed, and he was taken into custody and held by the deputies. The deputies asked Vincent if anyone else was in the building, but Vincent refused to answer.
While Vincent was being held just outside the building, near the broken window, plaintiff Tabb climbed through that window into the unlighted building, and he began to search the first room he entered with the use of a flashlight. He did not know that anyone else was in the building. Young Norred was in that room, armed with a 38 caliber pistol, and before he was discovered by plaintiff or anyone else, he fired a shot at Tabb, striking him in the chest just above the heart, causing plaintiff to fall backward to the floor paralyzed. Norred then moved to a spot near the place where plaintiff was lying helpless on his back, and he fired another shot aimed at about the middle of plaintiff's *226 stomach. The bullet went through Tabb's left hand, breaking three bones in that hand, and then it struck a large belt buckle which Tabb was wearing. The belt buckle stopped the bullet and prevented it from entering other parts of Tabb's body. After firing that second shot, Norred ran out of the building, but he was apprehended a few hours later in a nearby wooded area.
Young Norred and Vincent, and six other young men, including Darrell Patterson, had gone camping on the evening of November 5, a few hours before this shooting incident occurred. They took with them a relatively large supply of wine and beer, and Vincent concedes that some of it was consumed by him and by Norred. He stated that some of their companions got drunk. Vincent and Norred each had a pistol, and at about midnight they left the camp and shortly thereafter they "decided to go hit the school." They were riffling through the principal's desk when the officers arrived at the school building to investigate the disturbance which had been reported to them. Vincent stated that he had the loaded pistol in his hand during the entire time they were in the building.
The evidence shows that Vincent did not call out to or communicate with Norred in any way after Vincent was apprehended. He could have done so if he had desired, because he and Norred apparently where in the same room when Vincent was first caught by the officers, and Vincent remained just outside the broken window of that room, a very short distance from Norred, for a period of time after he was subdued.
The jury found that young Vincent was liable as a joint tortfeasor. The trial judge apparently agreed with the jury on the issue of liability, because he denied defendants' motion for a new trial and signed a decree substantially in accordance with the jury verdict.
Defendants contend that any liability on the part of young Vincent could arise only under Article 2324 of the Louisiana Civil Code, which provides:
"He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act." (Emphasis added). They argue that the Vincent boy is not liable because he did not fire the shot which struck plaintiff, he did not assist in the shooting, and he did not encourage Norred to shoot Tabb. Defendants point out that Vincent had been disarmed, and that he was outside the building and was in the custody of officers when plaintiff entered the school before he was shot. They take the position that Vincent thus did not cause Norred to fire the shot, and he did not assist or encourage in the commission of the act which caused plaintiff's injuries. They argue that under those circumstances Vincent is not liable under LSA-C.C. art. 2324.
We agree that Vincent did not cause Norred to fire the shot which injured plaintiff. We have concluded, however, that he did assist or encourage in the commission of the shooting, and that he thus is liable under Article 2324 of the Civil Code.
The evidence establishes that Vincent and Norred entered into a conspiracy to commit an unlawful act, the burglary of the school building. Both were armed with loaded pistols as they broke into the school and Vincent admits that he kept a loaded pistol in his hand during the entire time he was in the building. When their presence in the school was detected and the police officers attempted to apprehend them, both Vincent and Norred resisted arrest, and in doing so each fired the gun he carried. Norred deliberately fired his pistol at plaintiff twice, with the obvious purpose of seriously injuring or killing him. We find that he shot plaintiff to avoid being apprehended. Vincent testified that his gun was fired accidently while he was *227 tussling with the police officers. The evidence shows, however, that he resisted arrest, and that the loaded gun was in his hand when it was fired during his scuffle with the officers. The firing of the gun thus was caused by his attempt to resist arrest.
We believe that Vincent, by entering into a conspiracy with Norred to commit burglary while armed with loaded pistols, and then joining him in the execution of that conspiracy, actively assisted and encouraged in the commission of any acts which were incidental to the commission of that offense. Both of these young men were aware of the fact that they might be caught, and both of them obviously intended to use their guns in resisting arrest if they were detected, because otherwise there would have been no reason for them to have carried loaded guns in their hands while they were in the building. They, in fact, did use their guns in resisting arrest. The shooting, therefore, was something which Vincent reasonably should have anticipated might taken place when he entered into and joined in the execution of the conspiracy.
Defendants contend, and we agree, that a conspiracy does not of itself give rise to a cause or right of action for damages. It does so only insofar as it causes injury. If no actual damage results from something done by one of more of the conspirators in furtherance of the object of the conspiracy, no civil action lies against anyone. If a conspiracy is conceived and executed, however, and a private injury results, the one so injured has a right of action against all of the conspirators. The action is for damages caused by acts committed pursuant to a formed conspiracy, rather than by the conspiracy itself. Louisiana v. McIIhenny, 201 La. 78, 9 So.2d 467 (1942); Kernan v. Humble, 51 La.Ann. 389, 25 So. 431 (1899); Buras v. Machella, 172 La. 580, 134 So. 751 (1931); Cassidy v. Holliman & Spiers, 13 La.App. 468, 126 So. 733 (La.App. 1 Cir. 1930); Allen v. Currie, 8 La.App. 30 (La. App. 1 Cir. 1928); Levy v. Collins, 115 La. 204, 38 So. 966 (1905); Cooper v. Cappel, 29 La.Ann. 213 (1877); Nalle v. Oyster, 230 U.S. 165, 33 S.Ct. 1043, 57 L.Ed. 1439 (1913).
In Louisiana v. McIlhenny, supra, our Supreme Court quoted with approval the following statement from 11 Am.Jur., Conspiracy, Sec. 45:
"Accurately speaking, there is no such thing as a civil action for conspiracy. The action is for damages caused by acts committed pursuant to a formed conspiracy, rather than by the conspiracy itself; and unless something is actually done by one or more of the conspirators which results in damage, no civil action lies against anyone. The gist of the civil action for conspiracy is the act or acts committed in pursuance thereofthe damagenot the conspiracy or the combination. * * * The essential elements, whether of a criminal or `civil' conspiracy, are the same, except that to sustain a civil action for conspiracy special damages must be proved. 11 Am. Jur., `Conspiracy,' Sec. 45, Pages 577, 578."
In Buras v. Machella, supra, the Supreme Court indicated that the words "assists" and "encourages," as used in LSA-C.C. art. 2324, contemplate acts performed pursuant to a conspiracy. There the court said:
"Plaintiffs have clearly alleged that defendants, except Marine Gerica, formed a conspiracy to trespass upon plaintiffs' rights, and actually entered upon the premises leased by plaintiffs and removed therefrom, without lawful right of authority, the furs of a large number of captured fur-bearing animals, valued at $7,000. Under these allegations, taken as true, all of the defendants, except Marine Gerica, are cotrespassers and joint tort-feasors, and their liability is fixed by article 2324 of the *228 civil Code . . ." (Emphasis added).
The issues presented in Rush v. Town of Farmerville, 156 La. 857, 101 So. 243 (1924), are similar to those which are before us here. In that case plaintiff's son was killed by a shot fired by one member of a mob of twenty or more persons. She instituted a suit for damages against several members of the mob. The court found that a conspiracy had been entered into by members of the mob, and after citing Article 2324 of the Civil Code, it held that all of those who had participated in the conspiracy were liable, in solido, for the damages sustained by plaintiff, although only one of them had actually fired the shot. The court said:
"A `conspiracy' is a combination of two or more persons to do something unlawful, either as a means or as an ultimate end. State v. Slutz, 106 La. 182, 30 So. 298.
"The conspiracy having been sufficiently established, the act done by one in furtherance of the unlawful design is, in law, the act of all. State v. Griffin, 48 La.Ann. 1409, 20 So. 905. When a tort is perpetrated through the instrumentality of a combination or conspiracy, the party wronged and injured may look beyond the actual participants in committing the injury, and join with them, as defendants, all who co-operated in, advised, or assisted in the accomplishment of the common design, for co-trespassers are bound in solido."
In the instant suit young Vincent entered into a conspiracy with Norred to commit an unlawful act, and he actively participated in committing that offense. We think both parties contemplated that it might become necessary for them to shoot someone to avoid being apprehended, and the possibility of such a shooting thus constituted a part of the conspiracy. The cited jurisprudence indicates that Vincent, as a co-conspirator, is solidarily liable with Norred for the injuries sustained by plaintiff, even though Norred actually fired the shot. We believe that by joining in the execution of the conspiracy, Vincent assisted and encouraged in the commission of the act which caused plaintiff's injury, and that he thus is liable under LSA-C.C. art. 2324.
Defendants contend, however, that even if a conspiracy was entered into by Vincent and Norred, it did not contemplate gunfire, and that the shooting thus was outside of and beyond the conspiracy. They rely on the testimony of young Vincent to support that argument. Vincent testified that he and Norred took their guns with them as they left the camp because some of the other boys at the camp were intoxicated, and that he and Norred felt that it would be unsafe to leave the guns with them. He also testified that they broke into the school primarily in search of food, and defendants argue that "certainly one does not anticipate gunfire when the object is a late supper."
Neither the jury nor the trial judge accepted that argument, and we also are unable to accept it. Assuming that the two boys took the pistols with them solely because they did not want to leave them around their intoxicated companions, they have not explained to our satisfaction why they carried loaded pistols in their hands while they were in the building, and then actually used them when they were apprehended. Although Vincent testified that they broke into the school merely in search of food, they were apprehended in the principal's office, riffling through his desk. Vincent stated that after entering the building they broke the glass on the principal's door and entered his office. We do not agree with defendants that the boys were looking solely for food. In any event, they did break into the school, armed with weapons, and they used those weapons to resist arrest when their presence in the building was detected. We are unable to view their actions as an innocent boyish prank, for which Vincent at least should be relieved from liability.
*229 Defendants contend further that young Vincent should not be held liable as a co-conspirator because he had withdrawn from the conspiracy before the shooting occurred. They argue that since Vincent was in the custody of the police when the shooting occurred, he could not have been engaged in executing the conspiracy.
The law is settled that a member of a conspiracy may effectively withdraw from it, so as to exculpate himself from guilt and from liability for the future acts of his co-conspirators. In order for a conspirator to avoid liability by withdrawing from the conspiracy prior to the commission of an overt act, however, he must act in good faith and his withdrawal must be complete and voluntary. His withdrawal must be effected by some affirmative act, bringing home the fact of his withdrawal to his confederates. A mere intent to withdraw is insufficient. Piquett v. United States, 81 F.2d 75 (7 Cir. 1936); 15A C.J. S. Conspiracy § 78, Page 836; State v. Taylor, 173 La. 1010, 139 So. 463 (1932).
The case of State v. Taylor, supra, involved a criminal charge, but we think the principle of law applied in determining whether there had been a withdrawal from a conspiracy is applicable to the issues presented in this suit. In that case our Supreme Court said:
"One who has joined in a common design to kill or to commit an unlawful act, the natural and probable consequence of the execution of which involves the contingency of taking human life, may escape responsibility by the withdrawing from the undertaking before the homicide is committed by a confederate, if such withdrawal is communicated to his associates under circumstances that would permit them to do likewise. But if his withdrawal is not communicated at all, or under such circumstances as would not permit his confederate to withdraw, he is responsible for the homicide committed by such confederate in pursuance of the original design, or as a natural or probable consequence of its execution. One's withdrawal from the scene of the homicide intending that such action should advise his associates that he has withdrawn from participation in the common design may be considered in determining whether the withdrawal was communicated to his associates, but it does not necessarily establish the fact of the withdrawal or of its communication."
In this case we find that young Vincent did not voluntarily withdraw from the conspiracy, or from the execution of that conspiracy, before plaintiff was shot. We have already noted that Vincent could have communicated with Norred after Vincent had been apprehended, but that he did not do so. He could have called to Norred and informed him that he had withdrawn, or that he would have no further part in the conspiracy. If he had done so, it is conceivable that Norred also would have withdrawn, and that plaintiff would not have been injured. Vincent not only failed to communicate his alleged withdrawal to Norred, but he also refused to inform the police officers that Norred was in the building. He thus assisted Norred in catching plaintiff by surprise. If Vincent had given the officers the information they requested, it would have enabled them to communicate to Norred the fact that Vincent could no longer participate in the execution of the conspiracy.
There is no merit to defendants' argument that Norred knew that Vincent had been taken into custody, and that it thus was unnecessary for that information to be communicated to him. We may reasonably assume that Norred heard the shot fired by Vincent's gun, and that Norred knew that Vincent had engaged in a scuffle with the officers, but we find nothing to show that Norred knew the outcome of that scuffle or the effect which might have been produced by the firing of Vincent's gun. As far as we know from the record, Norred may have believed that Vincent was still resisting arrest and was actively trying to *230 carry out the conspiracy at the time Tabb entered the school building.
Our conclusion is that the evidence fails to show that Vincent had voluntarily withdrawn from the conspiracy, or that his forceable and involuntary restraint had been communicated to his confederate, before plaintiff was injured.
Defendants contend next that if young Vincent is liable at all, his liability is vicarious, since plaintiff's injury was caused solely by Norred, and Vincent's liability attaches only because he had previously entered into a conspiracy with Norred. They argue that a minor cannot be held vicariously liable for the offense or quasi offense of another. The case of Gott v. Scott, 199 So. 460 (La.App. 2 Cir. 1940), is cited as authority for that argument.
We do not agree that the liability of young Vincent is vicarious under the circumstances presented here. As a co-conspirator, he is responsible under LSA-C.C. art. 2324 for the damages resulting from the execution of the conspiracy, and we think he is liable as a joint tortfeasor with Norred for those damages.
Defendants contend that the trial court committed several errors during the trial which were prejudicial to them. One such error relates to some of the charges which were given to the jury. Another is that some questions were propounded to young Vincent which he refused to answer, pleading the Fifth Amendment, and defendants feel that his case was prejudiced by his being compelled to exercise that right. A third complaint of error is that a witness for plaintiff gave some hearsay testimony which was damaging to defendants. The record shows that as soon as the court and counsel discovered that a part of the testimony of that witness was hearsay, the trial judge ordered that it be stricken from the record, and he directed the jury to disregard it. Defendants feel that they nevertheless were prejudiced by the testimony, and that the admonishment by the court failed to remove the damage caused by it.
We have carefully reviewed the charges given to the jury, and we find no error in them. We also have considered the other complaints of error urged by defendants and have concluded that the latter have not been prejudiced by them. We do not feel that the judgment appealed from should be reversed, and we are unwilling to comply with defendants' alternate demand that the case be remanded for a new trial because of these alleged errors.
We turn now to the question raised by defendants as to the extent of the liability of Louis D. Vincent for the damages occasioned by the acts of his minor son.
Plaintiff entered into a compromise settlement of his claim against the Norreds and their insurer before the case was tried. All parties agree that in view of that settlement, the other joint tortfeasor, young Vincent, who was solidarily liable with Norred, was entitled to enforce contribution and thus to obtain judgment reducing his liability to one-half the amount which otherwise might be due plaintiff. LSA-C. C. art. 2103; Harvey v. Travelers Insurance Co., 163 So.2d 915 (La.App. 3 Cir. 1964); Cunningham v. Hardware Mutual Casualty Company, 228 So.2d 700 (La.App. 1 Cir. 1969).
The judgment rendered by the trial court condemns defendants, Louis D. Vincent, Nicholas Lee Vincent and State Farm, "jointly, severally and in solido" to pay plaintiff the principal sum of $300,000.00, but it contains a proviso that as to Nicholas Lee Vincent the principal amount of the judgment is reduced to one-half that amount because of that defendant's right of contribution from his co-tortfeasor, Norred. The judgment thus allows the right of contribution to the son, but it does not allow it to Louis D. Vincent, the father, although the latter was decreed to be liable in solido with his son. The effect of the judgment is to condemn the father to pay the full amount of the judgment, but to condemn the son to pay only one-half that amount.
*231 Defendants contend that the liability of Louis D. Vincent, the father, cannot exceed the net liability of his son, and that the trial judge erred in condemning the father to pay the full amount of damages sustained by plaintiff, while reducing the judgment against his son to one-half the amount because of the latter's right of contribution.
Our Supreme Court held in Wooten v. Wimberly, La., 272 So.2d 303 (1973), that the liability of the father under LSA-C.C. art. 2318 for the damages occasioned by his minor child is vicarious, secondary and derivative, and that the father is not solidarily liable with his child for such damages. Plaintiff contends that we must hold, consistent with that decision, that the liability of Louis D. Vincent, the father, is vicarious, that he is not liable in solido with his son for the damages occasioned by the latter, and that since the father is not solidarily liable with his son for the debt, he cannot enforce contribution as provided in LSA-C.C. art. 2103.
Defendants point out, however, that Article 2318 of the Civil Code reserves to the father recourse against his minor child for any amount which he might be required to pay for the damages occasioned by that child. We held in Wooten v. Wimberly, 254 So.2d 120 (La.App. 3 Cir. 1972):
". . . that a parent is entitled to reimbursement from the minor's estate for any amount which the parent must pay as a consequence of the minor's negligence."
We do not interpret the decision rendered by the Supreme Court, following its review of that case (La., 272 So.2d 303), as expressing a view contrary to the above statement of law.
If we should adopt plaintiff's view that the father can be condemned to pay more than his minor son actually owes as damages, it would lead to an inconsistency in the law which we think could not be tolerated. Under plaintiff's theory of the law, young Vincent can enforce contribution and reduce his liability to $150,000.00, whereas his father cannot enforce contribution and the father's liability thus remains at $300,000.00. We have pointed out that under our settled law the father may recover from his minor son's estate any amount which the father may have to pay as damages occasioned by his son's acts. If the father should be compelled to pay the full amount of damages, as plaintiff demands, and he then should enforce his right of indemnification against his son, the son ultimately would have to pay the full amount of damages and he thus would be deprived of his right to contribution. On the other hand, if the son should succeed in enforcing his right to contribution, then his father would be deprived of his right to indemnification. No such anomaly would or could occur if LSA-C.C. art. 2318 should be construed to mean that the father's liability under that article can never exceed the amount actually owed by his minor son.
We are not certain that the issue of whether the father and son are solidarily liable is actually before us on this appeal. The judgment decrees that Louis D. Vincent and his son are liable "jointly, severally and in solido" for the damages sustained by plaintiff. Plaintiff Tabb has not appealed from that judgment, and in his answer to the appeal he prays only that the amount of the award be increased. The judgment thus may be final insofar as it decrees that the father and son are solidarily liable.
We have decided to rule on this issue relating to solidary liability, however, assuming that it was raised by the answer to the appeal. Our conclusion is that the trial judge erred in failing to allow Louis D. Vincent to enforce contribution and to reduce his liability to one-half the amount of damages occasioned by the acts of his minor son. We base that conclusion on two grounds.
*232 We believe Article 2318 of the Civil Code imposes liability on the father for the full amount of the damage occasioned by his minor child. The child, of course, is also liable for the full amount of such damages. Either the father or the child may be compelled to pay the whole debt, we think, and payment by one will exonerate the other. The father has the right to be indemnified from the child's estate for any amount which he may be compelled to pay on that debt, but the child has no corresponding right of indemnification against the father.
We do not feel that Article 2318 was intended to mean that the father, who is free from any independent fault, should be condemned to pay more than the actual amount owed by his minor child as damages. We have already pointed out that to hold otherwise would compel the child in some cases to pay more than he actually owes as damages. We conclude, therefore, that the father's liability under LSA-C.C. art. 2318 for damages occasioned by his minor child, where the father is free from independent fault, cannot exceed the amount which the child may be condemned to pay, even though the child's liability was reduced by the enforcement of his right of contribution.
We also are convinced that defendant Louis D. Vincent is entitled to enforce contribution, as was done by or in behalf of his son, and thus reduce his liability to one-half the damages suffered by plaintiff. Even though Vincent and his son may not be liable in solido for the debt owed to plaintiff, the fathers of the two boys, Mr. Vincent and Mr. Norred, were solidarily liable for the damages occasioned by the acts of their sons. Since the two fathers were solidarily liable for those damages, and prior to trial plaintiff granted a release to Norred, one of the solidary obligors, the remaining obligor, Vincent, had the right to enforce contribution and thus to have his liability reduced, as provided in LSA-C.C. art. 2103.
In Sutton v. Champagne, 141 La. 469, 75 So. 209 (1917), a damage suit was instituted against the parents of two minors for damages resulting from the death of plaintiff's son. Our Supreme Court held that both parents were liable "in solido" for the damages sustained by plaintiff. In that case one of the parents was found to be guilty of independent negligence, and he thus was condemned to pay to the other parent any amount which the latter might be compelled to pay on the judgment. The parent who was free from fault, however, was nevertheless held to be liable in solido with the other parent.
The rule applied in Sutton v. Champagne, supra, was applied or cited with approval in Appalachian Corp. v. Brooklyn Cooperage Co., 151 La. 41, 91 So. 539 (1922); Rumpf v. Callo, 16 La.App. 12, 132 So. 763 (1931); American Employers' Insurance Company v. Gulf States Utilities Company, 4 So.2d 628 (La.App. 1 Cir. 1941); DeCuers v. Crane Co., 40 So.2d 61 (La.App.Orl.1949); and Williams v. Marionneaux, 116 So.2d 57 (La.App. 1 Cir. 1959).
We conclude that the judgment appealed from must be amended to reduce the liability of defendant Louis D. Vincent to one-half the total amount of damages suffered by plaintiff.
Defendants contend that the trial court committed error in failing to allow them to amend their answer so as to plead the unconstitutionality of Article 2318 of the Louisiana Civil Code.
The judgment of the trial court was rendered on December 3, 1971, and a motion for new trial was filed by defendants on the same day. On January 5, 1972, while the motion for a new trial was pending, defendants submitted to the trial judge an amended answer in which they, for the first time, pleaded the unconstitutionality of LSA-C.C. art. 2318. The trial judge signed a formal order on that date refusing to permit defendants to filed the amended *233 answer. He subsequently denied defendants' motion for a new trial.
We held in Mouton v. Bourque, 253 So. 2d 689 (La.App. 3 Cir. 1971), that a plea of unconstitutionality of a statute is an affirmative defense which must be specially pleaded. LSA-C.C.P. art. 1151 provides that a defendant may amend his answer once without leave of court at any time within ten days after it has been served, but that otherwise, the answer may be amended only by leave of court or by written consent of the adverse party.
We find no error on the part of the trial court in refusing to permit defendants to file the amended answer. The issue relating to the constitutionality of Article 2318 of the Civil Code thus is not before us on this appeal.
The final issue presented relates to quantum. Defendants contend that they were prejudiced by the refusal of the trial judge to permit them to introduce evidence tending to show the inability of defendant Louis D. Vincent to pay damages. They feel that the award would have been lower had that evidence been permitted. Plaintiff contends that the amount of the award should be increased to $500,000.00.
The evidence which defendants attempted to introduce along that line consisted of written interrogatories propounded to Louis D. Vincent by plaintiff, some of which related to Vincent's ability to pay, and the answers which Vincent made to those interrogatories.
Our jurisprudence is established that the defendant in a tort action may present evidence which tends to show his inability to pay general damages. Winzer v. Lewis, 251 So.2d 650 (La.App. 2 Cir. 1971); Rollins v. New York Fire & Marine Underwriters, Inc., 225 So.2d 663 (La.App. 3 Cir. 1969). The inability of the defendant to pay is not an affirmative defense which is required to be specially pleaded. Williams v. Garner, 268 So.2d 56 (La.App. 1 Cir. 1972). In view of this established jurisprudence we think the trial judge erred in refusing to permit defendants to present to the jury the written interrogatories and answers relating to Vincent's ability to pay.
The interrogatories and answers which were offered by defendants are in the record, and the evidence which defendants attempted to get before the jury thus is available to us. Since we have authority to amend the award of damages, and the evidence which defendants sought to offer is in the record, we see no need to remand the case for a new trial.
The evidence shows that the liability of defendant State Farm is limited to $25,000.00. The other evidence in the record convinces us that both of the other defendants, Louis D. Vincent and his minor son, are not financially able to respond in judgment to the excess required by the judgment appealed from.
The evidence shows that plaintiff sustained very severe injuries as a result of the acts of the two minors. He is paralyzed from the waist down, with no control over his bowel or urinary functions, and he will remain in that condition for the rest of his life. He suffers from ulcers and bed sores, and the medical testimony indicates that he will need continued medical treatment for the remainder of his life. He was about 37 years of age when the injury was sustained, and had a life expectancy of 33.4 years. His family consisted of his wife and four children, ranging in ages from seven to fifteen years. He was in excellent health before the accident, and had been employed as a deputy sheriff for a period of two and one-half years before the time of his injury.
The nature of plaintiff's injuries and the extensive medical and nursing care which he will need indicate to us that the amount of the award should be increased. In view of defendants' apparent inability to pay the amount of the award made by *234 the jury and trial court in excess of the insurance coverage, however, we have decided that the award was within the range of discretion vested in the jury, and we will not disturb it.
For the reasons assigned, the judgment appealed from is amended to decree that as to defendant Louis D. Vincent, as well as Nicholas Lee Vincent, the principal amount of said judgment is reduced to one-half thereof. In all other respects the judgment appealed from is affirmed. The costs of this appeal are assessed to defendants-appellants.
Amended and affirmed.