481 So.2d 702 (1985)
Ray M. BARRIOS
v.
ASSOCIATES COMMERCIAL CORPORATION.
No. 84-CA-1160.
Court of Appeal of Louisiana, First Circuit.
December 26, 1985.
Stanley L. Perry, Atty. at Law, Galliano, for Ray Barrios.
Mary Catherine Cali, Baton Rouge, for Associates Commercial Corp.
Before EDWARDS, LANIER, and JOHN S. COVINGTON, JJ.
EDWARDS, Judge.
In 1981, Ray Barrios went into the trucking business. On June 15th of that year he bought a new Magirus truck from a Mack Truck dealer in New Orleans. The Magirus is foreign-made but is distributed by Mack dealers in this country. Barrios made a cash down payment of $6,900.00 against the purchase price. His balance owed, including finance charges, insurance *703 premiums and other fees, came to $65,472.00. He executed a mortgage and a promissory note in this amount on the same day that he bought the truck. The note and mortgage were then assigned to Associates Commercial Corporation, who financed the sale. The note called for 48 monthly payments of $1,364.00, the first payment coming due on July 14, 1981. Included in these payments were premiums to provide credit accident and health insurance.
Barrios was late with his first payment, making the July 14th payment on August 5th. Then, three days later, he suffered a painful back injury in a job-related accident. He was hospitalized and required surgery for a herniated disc. This rendered him unable to work for several weeks.
Shortly after the operation, Barrios telephoned the salesman who had sold him the truck. The salesman assured him that his "A & H" coverage would apply in this situation. He sent Barrios a set of claim forms to be filled out and mailed to the three insurance companies involved.
During this time Barrios did not pay his monthly note. On the theory that his insurance would take care of the matter, he missed the payments for August and September. With the account now more than $2,500.00 in arrears, Associates became uneasy. The collection manager called Barrios to make inquiry. Testimony indicates that the two men had a surly conversation in which nothing was agreed upon. Barrios refused to pay anything, insisting that he did not owe it. The collection manager made no allowances for the insurance. He said only that the account was seriously in arrears and that he wanted his money. His irritation was enhanced by rumors that Barrios had hired drivers to keep the truck working and producing income, part of which was owing on the note.
Invoking its legal remedies, Associates filed a petition to seize the truck under executory process. In due course of time and after legal delays having been had, the truck was seized on December 7, 1981. It was held for fourteen days, but was released when Barrios paid Associates the full sum of $5,397.13, which included all of the arrears plus costs and attorney's fees.
Barrios brought suit against Associates for wrongful seizure. In addition, he sued the truck dealership, the agent who placed the A & H policies, and the three insurance companies providing coverage. The latter companies all moved for summary judgment and were dismissed from the suit.
In a non-jury trial, Barrios pressed his case against the remaining defendants on April 16 and 17, 1984. Plaintiff presented his case in chief, whereupon Associates, the agent and the dealership moved for directed verdicts. The trial judge granted the motions and dismissed the suit.
Plaintiff now brings this appeal, based on two assertions: (1) The seizure was wrong and illegal, and (2) It violated the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401 et seq.

ILLEGAL SEIZURE
Plaintiff Ray Barrios claims the seizure of the truck was illegal because his payments were to be made for him under his accident and health insurance coverage. He is saying, essentially, that the fact of his disablement shifted the obligation for the monthly payments from himself to the companies providing coverage.
A situation very much like this one was confronted by the Third Circuit in Ford Motor Company v. Breaux, 406 So.2d 313 (La.App. 3d Cir.1981). The court said, at page 316:
It is obvious that the mere existence of a policy of credit accident and health insurance does not automatically give rise to the suspension of a debt secured by the chattel mortgage upon the disability of the mortgagor-insured. Instead, there are simply two different contracts and different resulting rights in such a situation. The existence of the insurance policy does not operate to alter the contractual *704 rights between the mortgagor and the mortgagee.
Plaintiff attempts to distinguish Breaux from the case at bar. He asserts collusion among Associates, the truck dealership, and the insurance companies, enabling Associates to collect both the insurance payments and the monthly payments under the note. This position was asserted at trial but there is nothing whatever in the record to support it. Failing such proof, the case is well within the rule in Breaux, which we hold to be applicable.
Even though it is true, as Barrios urges, that the A & H policies were actually making payments to Associates when the truck was seized, the account was still in arrears. This in itself sufficiently justified action to collect the amount owed.
Plaintiff's counsel urges in his brief that the note and mortgage were not properly notarized and were, consequently, not in the authentic form necessary to support executory process. Very little proof of this was attempted at trial. Aside from a single, uncorroborated assertion by Barrios himself, there is no evidence of any kind in the record tending to substantiate it.
Counsel urges in his brief that the seizure was illegal due to lack of notice and demand for payment by Associates. It is well settled in our law that notice and demand are unnecessary if they have been waived in the note or mortgage. Reed v. Meaux, 292 So.2d 557, 574 (La.1973), and LSA-C.C.P. Art. 2639. Both the note and the mortgage signed by Barrios contain standard language explicitly waiving notice and demand. Associates was therefore correct in omitting these formalities when it filed for executory process.
After thoroughly reviewing the record, we agree with the trial court that the seizure of the truck was neither wrong nor illegal. We hold further that plaintiff failed to prove any abuse of executory process in his case in chief. Accordingly, the trial judge was correct in granting a directed verdict for defendants in this aspect of the lawsuit.

UNFAIR TRADE PRACTICES
Plaintiff asserts that the trial court should have found the use of executory process by Associates under the prevailing circumstances to be "unfair, deceptive, unlawful, immoral, unethical, oppressive, unscrupulous, substantially injurious," and, consequently, a violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401 et seq. Defendant, on the other hand, contends that the law in question does not apply to this case at all. The trial court agreed with defendant's position and ruled accordingly.
Associates argues that this case is not the kind of situation intended to be covered as a "consumer transaction." In her brief, defense counsel says, "It is obvious that the case before the court did not involve a consumer transaction, as the vehicle purchased was a specially-designed vehicle intended for heavy-duty commercial purchases. This being the case, therefore, the court should be reluctant to apply the same standard in this instance as it would in a situation in which it may be necessary to protect an ordinary consumer."
Counsel finds apparent refuge in the wording of § 1402(3) which defines a consumer transaction as "... any transaction involving trade or commerce to a natural person, the subject of which transaction is primarily intended for personal, family, or household use." This interpretation would seem to limit the law's coverage to minor items used "around the house," such as toasters, blenders, power mowers or window-mounted air conditioners.
We find this to be far too narrow a reading of the legislation. § 1402(1) defines "consumer" as "any person who uses, purchases, or leases goods or services." § (2) defines "consumer interest" as "those acts, practices, or methods that affect the economic welfare of a consumer." § (8) defines "person" as "a natural person, corporation, trust, partnership, incorporated association, and any other legal entity." § 1405 says, "Unfair methods of competition and unfair or deceptive acts or practices *705 in the conduct of any trade or commerce are hereby declared unlawful." (Emphasis added).
The statute plainly establishes two separate categories of regulated activity. The first is that of consumer "transactions" which does indeed cover natural persons only, in trade or commerce for personal or household use. The second category is that of consumer "interest," covering the entire broad field of economic welfare of the consumer, defined here as "any person" buying an unlimited array of goods and services.
The jurisprudence supports a broad application of the statute. Business activities of both an automobile manufacturer and a dealer were held to be within the purview of the act. Gour v. Daray Motor Co., Inc., 373 So.2d 571 (La.App. 3d Cir.1979), writ granted 376 So.2d 1270 (La.1979) (and later dismissed, 377 So.2d 1033 (La.1979)). Attorneys' advertising was held to be subject to regulation, since advertising of legal services is clearly "commerce" or a "trade" under the act. Reed v. Allison & Perrone, 376 So.2d 1067 (La.App. 4th Cir.1979). The collection tactics of a bank were held to be regulated activity. Bank of New Orleans and Trust Co. v. Phillips, 415 So.2d 973 (La.App. 4th Cir.1982). Using the authority conferred by the act, the State Attorney General sued General Motors on the claim that a number of automobiles with substituted engines had been sold in the state. State ex rel. Guste v. General Motors Corp., 354 So.2d 770 (La.App. 4th Cir.1978), writ granted 356 So.2d 1005 (La.1978), affirmed and remanded 370 So.2d 477 (La. 1978). Thus the courts have not limited the statute's application in the narrow way suggested by Associates.
There are certain accepted rules for interpreting state statutes. This court said in Bunch v. Town of St. Francisville, 446 So.2d 1357 (La.App. 1st Cir.1984), at page 1360:
The meaning and intent of a law is to be determined by a consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the law and with the obvious intent of the lawmaker in enacting it. Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions. A construction of a law which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the law and will carry out the intention of the lawmaker. (citations omitted.)
It is patently inconsistent to limit the transactions covered to those involving household items, and then to define the consumer as any person using (any) goods or services. Accordingly, we hold that there are two different regulated categories: consumer transactions and consumer interests. Each has its limits as defined by the statute.
The purchase of a heavy-duty, special-order imported truck for commercial use falls within the category of consumer interest and is regulated under the act.
The final question to be decided is whether or not Associates violated the statute when it seized plaintiff's truck. Plaintiff relies upon Moore v. Goodyear Tire and Rubber Company, 364 So.2d 630, 633 (La.App. 2d Cir.1978), for the proposition that wrongful repossession is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" under the act. Thus, one must first establish that the repossession was wrongful. In Moore, the creditor entered the debtor's home without his knowledge or consent and took possession of the property. That is substantially different from the instant case and is essentially inapplicable. Here, the repossession was accomplished in a lawful manner by court order.
Plaintiff further contends that the note and mortgage were not in authentic form and that there was collusion among Associates, *706 the truck dealership, and the insurance agent to effect an illegal repossession. The trial court found no proof whatever of these assertions when Barrios presented his case. We agree with the court.
This litigation is basically a matter of non-payment and repossession. The creditor was fully justified in pursuing its rights under the written terms of sale. To hold otherwise would be to make enforcement of secured transactions nearly impossible.
Costs are taxed to plaintiff.
AFFIRMED.
LANIER, J., concurs in the result.