United States Court of Appeals,

Fifth Circuit.

No. 92-3588.

Leon J. TURNER, d/b/a Lee's Creek Farm and Ranch, Plaintiff-Appellee,

v.

PURINA MILLS, INC., and Dan Robichaux, Defendants,

Purina Mills, Inc., Defendant-Appellant.

May 7, 1993.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before REYNALDO G. GARZA, WILLIAMS, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Purina Mills, Inc. appeals a final judgment of the district court awarding G. Leon Turner damages and attorney fees for violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La.Rev.Stat.Ann. §§ 51:1401 *et seq.* (LUTPA). Finding insufficient evidence for submission of the case to the jury, we reverse and render judgment for Purina.

I.

As part of his business, Turner sells animal feed to area farmers. He first became an authorized Purina dealer in 1976 in the Bogalusa, Louisiana area. In 1982 he opened a second authorized dealership in the Folsom area. In 1984 Turner also began selling feeds manufactured by other companies.

In 1986 he entered into a written dealership agreement with Purina. The agreement specified that the parties were to conduct business with each other in a "moral, legal, and ethical manner." The agreement provided Purina with the right to sell directly to large feeding operations in the area. Either party was free to terminate the arrangement upon thirty days' notice to the other party. The agreement expressly disclaimed that it created an exclusive dealership for Turner.

In the mid 1980s Turner's sales of Purina products began to fall. From the 1986-87 period to the 1987-88 period alone, Turner's sales of Purina feed fell 42%. Both sides attribute this decline

largely to the economic depression in the region brought on by the collapse of the oil industry. According to Turner, his customers preferred less expensive feeds than those sold by Purina. In 1988 Purina warned Turner that continued poor sales of Purina feed would lead Purina to cancel his dealership.

During the next two years Purina representatives made sales calls on customers buying feed from Turner in an effort to get them to purchase Purina feed. Although the Purina representatives, David Nelson and Dan Robichaux, invited Turner to accompany them on these sales calls, he declined. A Purina dealer in the Covington area, Curtis Spencer, accepted invitations to accompany the Purina representatives on sales calls. During these sales calls, the customers were offered credit to purchase Purina products. The Purina representatives knew that some of these customers bought feed from Turner.

In October 1990, Purina terminated Turner's Bogalusa and Folsom dealerships because of unsatisfactory sales performance. In response, Turner filed suit against Purina under LUTPA.

At trial before a jury, Turner presented evidence from four customers who purchased Purina feed from Turner. These witnesses said they had been approached by Purina representatives in the presence of Spencer in an effort to get them to buy more Purina feed. Turner also elicited testimony from former Purina dealers in other parts of the country who said that Purina had previously sold feed directly to large operations in their marketing areas and that Purina had worked through other dealers in their areas. This testimony was admitted presumably to show a pattern and practice of Purina's abusive behavior toward its dealers.

To demonstrate further Purina's supposed egregious behavior, Turner produced an internal Purina memorandum he obtained during discovery. The memorandum, written by Robichaux after Purina terminated Turner's dealership, stated:

> Objective ... 1) We feel that we could maintain existing Purina business intermediately and achieve solid growth through a new dealer in the Bogalusa market although we may experience a loss short term.... and 2) work toward eliminating Lee's Creek [Turner's business] as a major competitor in both the Bogalusa and Folsom markets....

Turner produced three witnesses at trial to prove his lost profits resulting from Purina's alleged unfair trade practices. Two of the witnesses were loyal Purina customers who testified that

they no longer purchase feed from Turner because he does not carry Purina products. The third witness was Dr. Seymour Goodman, an economist who projected Turner's lost profits (over the expected life of his business) due to the cancellation of the Purina dealership. Dr. Goodman's figures were not based on any actual losses suffered by Turner and his figures did not take into account possible product substitution by Turner's Purina customers. Dr. Goodman calculated Turner's lost profits at approximately $150,000.

At the close of Turner's case, and again following the close of evidence, Purina moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). The district judge denied the motions and the case went to the jury. On March 2, 1992, the jury returned a verdict in favor of Turner for $49,500. On June 12, the district judge entered a judgment for Turner for $49,500, plus interest, attorneys' fees totalling $39,140, and costs. Purina appeals the denial of its FRCP 50(a) motion and the monetary award.

## II.

## A.

We review motions for judgment as a matter of law pursuant to FRCP 50(a) under the test first established in this circuit by *Boeing Company v. Shipman,* 411 F.2d 365 (5th Cir.1969). In considering whether there was sufficient evidence to submit the case to the jury in the face of a 50(a) motion, we examine all of the evidence in the light and with all reasonable inferences most favorable to the non-movant. *Id.* at 374. A directed verdict is proper only if the evidence points "so strongly and overwhelmingly in favor of one party" that a reasonable trier of fact could not arrive at a contrary verdict. *Id.* Fundamentally, we must decide based on the evidence whether a reasonable jury could conclude as this jury did. *Id. See also Molnar v. Ebasco Constructors, Inc.,* 986 F.2d 115, 117 (5th Cir.1993).

In this diversity case, we apply the substantive law of Louisiana. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

Turner sued for violation of LUTPA, alleging that Purina violated the Act by soliciting Turner's customers with a Turner competitor (Spencer) present, offering credit to those customers,

cancelling the dealership, and formulating a desire to eliminate Turner's dealership. Purina counters that all of its actions were legitimate attempts to increase its market share and thus did not constitute unfair trade practices.

B.

It is important at the outset to say generally what LUTPA makes illegal and what it does not make illegal. The statute declares that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are illegal. La.Rev.Stat. § 51:1409. It provides that "any person who suffers any ascertainable loss of money or movable property, corporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by [the Act]" has a cause of action under LUTPA for damages. § 51:1405.

Louisiana has left the determination of what is an "unfair trade practice" largely to the courts to decide on a case-by-case basis. *Marshall v. Citicorp,* 601 So.2d 669, 670 (La.App.1992). Cases decided under the statute have defined the range of prohibited practices quite narrowly. An "unfair trade practice" is "a practice that is unethical, oppressive, unscrupulous, or substantially injurious." *Bolanos v. Madary,* 609 So.2d 972, 977 (La.App.1992) (internal quotes omitted). Fraud, misrepresentation, deception, and similar conduct is prohibited; mere negligence is not. *Marshall,* 601 So.2d at 670. Further, Section 1409 of the Act, which provides for damages, fees, and costs, "is penal in nature and is subject to reasonably strict construction." *Coffey v. Peoples Mortgage & Loan of Shreveport,* 408 So.2d 1153, 1156 (La.App.1981).

LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions. *Monroe Medical Clinic, Inc. v. Hospital Corp. of America,* 522 So.2d 1362, 1365 (La.App.1988). The statute does not forbid a business to do what everyone knows a business must do: make money. Businesses in Louisiana are still free to pursue profit, even at the expense of competitors, so long as the means used are not egregious. Finally, the statute does not provide an alternate remedy for simple breaches of contract. *State v. Orkin Exterminating Co.,* 528 So.2d 198, 202 (La.App.1988). There is a great deal of daylight between

a breach of contract claim and the egregious behavior the statute proscribes.

A review of Louisiana cases decided under LUTPA reveals the kind of behavior the statute aims to punish. These cases often involve breaches of ethical standards arising from the employer-employee relationship. See, for example, *National Oil Service of Louisiana v. Brown,* 381 So.2d 1269 (La.App.1980) (employees violated LUTPA); *Roustabouts, Inc. v. Hamer,* 447 So.2d 543 (La.App.1984) (employees violated LUTPA); *Dufau v. Creole Engineering, Inc.,* 465 So.2d 752 (La.App.1985); and *Potvin v. Wright's Sound Gallery, Inc.,* 568 So.2d 623 (La.App.1990) (employee did not violate LUTPA).

LUTPA does not apply only to the employer-employee relationship, of course. Yet it is instructive for our purposes to examine these cases to discern why they have been the focus of numerous LUTPA actions. What offends the statute in those cases is the breach of a special relationship of trust between the employer and employee. Through their employment experience, employees gain access to privileged information regarding the employer's particular business practices, methods of production, names of customers, and so forth. *See, for example, National Oil Service,* 381 So.2d at 1272. The customers of the business are the employer's customers, not the employees'. The employer is, therefore, especially vulnerable to duplicity at the hands of managers and other employees. Courts zealously guard against allowing those in this special position of trust to profit from their wrongdoing.

### III.

With those principles and decisions in mind, we come to Turner's claim that Purina violated the statute.

The relationship between Purina and Turner was that of a supplier and dealer. The customers to whom Turner sold Purina feed were not his alone; they were also Purina customers. According to the explicit terms of the dealership contract, Turner did not have exclusive dealership rights in the Bogalusa-Folsom area. Purina was free—and both parties understood this—to sell its products through Turner's competitors in the feed business. According to the unambiguous terms of the dealership contract, Purina was also free to sell its feed directly to large operations. Nothing in the

contract prevented Purina from contacting customers in Turner's area.

It is clear, therefore, that Turner does not have a claim for breach of contract, nor does he press one. Turner attempts through this lawsuit to get around that uncomfortable fact by bringing this LUTPA claim. His claim rests principally on the fact that Purina contacted customers who bought Purina feed from him. This, he hopes, will bring this case within the ambit of the employer-employee cases cited above where an employee uses the employer's customer lists to his own advantage.

Yet as we have noted, the customers Purina contacted were not Turner's alone. Purina was attempting to get more business in a marketing area where its sales were sagging. Purina representatives invited Turner to accompany him on these trips, but he declined to go. Thus, there was no fraud, misrepresentation, or deception in Purina's contacting customers who bought its feed. *Marshall,* 601 So.2d at 670. Turner invites this court effectively to hold that Purina was bound by Turner's decision to forego legitimate business opportunities in the sale of Purina's own products. Bearing in mind that LUTPA does not abolish free competition, we decline that invitation.

Turner also makes much of the internal memorandum written by Purina's representative, Dan Robichaux. That memo promised to eliminate Turner as a major business competitor in the region. Turner contends that this statement evinces an intent to destroy his business and violates LUTPA. For two reasons, he has jumped to the wrong conclusion. First, Robichaux wrote the memo only after Purina cancelled Turner's dealership contract. Whatever special relationship Turner enjoyed with Purina under the contract ended with its termination. *Taquino v. Teledyne Monarch Rubber,* 893 F.2d 1488, 1499 (5th Cir.1990) ("While [the defendant] may have had every right to do those things after his contract was terminated, he had no right to do so before."). After termination of the dealership, Purina and Turner were nothing more than business competitors vying for the same customers in the rough-and-tumble of the free market. Second, an intent to eliminate the competition does not by itself violate LUTPA. Rather, the statute forbids businesses to destroy each other through improper *means.* Nothing on the face of the Robichaux memo demonstrates that improper means were planned or used against Turner.

In denying Purina's motion for summary judgment, the district court remarked that Purina and Turner had contracted to do business in a "moral, legal, and ethical manner." The district court concluded therefore that Purina "may have undertaken contractually a higher duty of good faith than that provided for under the Act." While it does seem that the contractual language holds the parties to a higher standard than does LUTPA, this is irrelevant. Turner does not allege a breach of contract. To avoid that pitfall, Turner urges that the contractual provision holds Purina to a higher standard *under LUTPA*. Turner alerts us to no Louisiana cases that hold that parties may contract for a higher ethical standard binding under LUTPA, and we are aware of none. If the Act is to be expanded as Turner suggests, it is for Louisiana courts to say so.

Finally, we note that even if a reasonable jury could conclude that any of the above actions or others charged by Turner were oppressive or unethical, Turner has not shown how they injured him. LUTPA carefully limits recovery to "any person who suffers any ascertainable loss ... *as a result of* the use or employment by another person of an unfair or deceptive method, act or practice". § 51:1409 (emphasis added). The only losses charged by Turner at trial resulted from Purina's cancellation of Turner's dealership contract. The contract between Purina and Turner was terminable at the will of either party upon thirty days' notice to the other. Turner had ample notice that Purina was concerned with his poor sales record. Purina warned Turner in 1988 that it would cancel the contract if his promotional activity and sales did not rise. There was no fraud, misrepresentation, deception, or similar ethical breach in the cancellation of the contract. Purina had every right under the circumstances to end Turner's dealership. We therefore refuse to bind Purina to a contract term for which Turner never bargained by awarding him prospective profits.

Because we hold that Purina did not violate LUTPA as a matter of law, we need not address Purina's contention that Turner's losses were speculative.

IV.

After reviewing all of the evidence and reasonable inferences in the light most favorable to Turner, we hold that he failed to allege facts sufficient to make out a claim under LUTPA. Even if Purina committed all the acts Turner alleges, those acts are not unethical, oppressive, unscrupulous,

or substantially injurious.  Further, even if some of Purina's acts did violate LUTPA, none of those acts resulted in loss to Turner.  The only act that did damage Turner, cancellation of the dealership contract, did not violate LUTPA.  Accordingly, the trial court should have granted Purina's motion for judgment as a matter of law under FRCP 50(a).  Because it did not, we **REVERSE** and **RENDER** judgment in favor of Purina.