SHAW INDUSTRIES, INC., Shaw International, Inc., and Abdulla Ahmed Nass Companies Group

v.

Chris J. BRETT and Comex Services Company.

Civ. A. No. 93–510–B.

United States District Court, M.D. Louisiana.

Nov. 3, 1994.

Nicol M. Lalumandier, James Russell Lewis, David Clayton Sander, and James Scott Fargason, Preis & Crawford, Baton Rouge, LA, for plaintiffs/counterdefendants.

Gerald Michael Pharis, Marc Stephen Whitfield, and David Mark Bienvenu, Jr., Taylor, Porter, Brooks & Phillips, Baton Rouge, LA, for defendants/counterclaimants.

## RULING ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

POLOZOLA, District Judge.

This matter is before the Court on the defendants' motion for partial summary judgment. For the reasons which follow, the Court finds that the defendants' motion should be granted in part and denied in part.

### I. FACTS

On April 14, 1992, Abdulla Ahmed Nass, owner of the Nass Companies Group ("Nass"), obtained the brokerage services of Chris J. Brett ("Brett") and Comex Services Company ("Comex") for the sole purpose of locating a potential Joint Venture partner with whom it would establish a company in the Arabian Gulf area to manufacture and fabricate carbon steel and alloy piping systems. The contract provided that should Brett and Comex succeed in locating a partner for Nass, they would be compensated pursuant to terms mutually agreed upon in the future by Comex, Nass, and the proposed partner. Furthermore, the contract provided that Brett and Comex's payment was contingent upon the actual formation of the Joint Venture company.

In October or November of 1992, Brett, on behalf of Comex, contacted James M. Bernhard, Jr., President and Chief Executive Officer of Shaw Industries ("Shaw"), regarding Nass's interest in forming a Joint Venture company in the Middle East. After numerous communications, a meeting between all parties was held on March 10, 1993, to execute a Letter of Intent between Nass and Shaw and to establish the brokerage fee to be paid Brett and Comex.

After it was determined that Nass and Shaw desired to execute a Letter of Intent regarding the formation of a Joint Venture between themselves, the brokerage fees payable to Brett and Comex were negotiated. Brett proposed that he and Comex be paid a lump sum amount and be given an indefinite participation in the profits generated by the Joint Venture as compensation for their services. Shaw, however, rejected this offer and stated that it would not form the Joint Venture with Nass if Brett and Comex insisted on being included in the Joint Venture as partners. Instead of preventing the formation of the Joint Venture and not being compensated at all, Brett and Comex agreed to accept a $150,000 payment as their entire brokerage commission. Brett agreed to return later that day to execute a written Broker's Agreement to this effect, but failed to do so.

In reliance upon the agreement by Brett and Comex to accept a lump sum fee and not a profit interest, Shaw signed a Letter of Intent with Nass to form a Joint Venture. However, approximately a month after the March 10th meeting, Brett contacted Nass, and later Shaw, and requested an interest in the Joint Venture's profits even though he had expressly agreed earlier to accept $150,000 as his full fee. Upon questioning by Shaw's counsel, Brett stated that he and Nass had entered into a secret agreement prior to March 10th to allow him to share in the profits of the Joint Venture. Brett also admitted to Shaw that he had misrepresented this fact at the meeting on March 10, 1993.[1]

As a result of Brett's claims to a profit interest in the Joint Venture, Nass and Shaw ("plaintiffs") filed suit against Brett and Comex ("defendants") alleging, among other

---

1. For purposes of this motion, Brett and Comex assume, without conceding, that the factual allegations as to Shaw and Nass' claims for unfair trade practices and tortious interference with contract are true.

things, that Brett's conduct violated the Louisiana Unfair Trade Practice and Consumer Protection Law[2] and amounted to tortious interference with contract. In response to the plaintiff's suit, the defendants filed this motion for partial summary judgment asserting that even if one assumes the plaintiffs' factual allegations to be true, these two causes of action are not legally cognizable under Louisiana law.

## II. SUMMARY JUDGMENT

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3] If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.[4] In opposing the granting of summary judgment, the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings, but by its own affidavits, depositions, answers to interrogatories, or admissions the non-moving party must set forth specific facts showing that there is a genuine issue for trial.[5] When all the evidence presented by both parties could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.[6]

Where the non-moving party bears the burden of proof at trial, the moving party may discharge its burden by showing or pointing out to the court that there is an absence of evidence to support the non-moving party's case.[7] The moving party is not required to produce evidence to negate the non-moving party's claims.[8] The non-moving party must then come forward with evidence which establishes each element for which that party bears the burden of proof at trial. Otherwise, no genuine issue as to any material fact exists, since a complete failure of proof concerning one element of the non-moving party's case necessarily renders all other facts immaterial, and the moving party is entitled to summary judgment.[9]

## III. UNFAIR TRADE PRACTICE

▮▮▮▮ Louisiana provides a private cause of action for any person who suffers damage as a result of unfair or deceptive acts or practices in the conduct of any trade or commerce where the action constitutes a violation of the Louisiana's Unfair Trade Practices and Consumer Protection Law ("the Act" or "LUTPA").[10] A trade practice is deemed unfair "when it offends established policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers and consumers include business competitors."[11] A

---

2. La.R.S. 51:1405–51:1418 (1987 and Supp. 1993).

3. Fed.R.Civ.P. 56(c); *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Cormier v. Pennzoil,* 969 F.2d 1559 (5th Cir.1992), *Fontenot v. Unjohn Co.,* 780 F.2d 1190 (5th Cir.1986).

4. *Cormier,* 969 F.2d at 1560.

5. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Reese v. Anderson,* 926 F.2d 494, 498 (5th Cir.1991); *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

6. *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *Cormier,* 969 F.2d at 1560.

7. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554; *Lavespere,* 910 F.2d at 178; *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.,* 868 F.2d 740, 747 (5th Cir.1989); *Slaughter v. Allstate Ins. Co.,* 803 F.2d 857, 860 (5th Cir.1986).

8. *Latimer v. Smithkline & French Laboratories, Div. of Smithkline Beckman Corp.,* 919 F.2d 301, 303 (5th Cir.1990); *Lavespere,* 910 F.2d at 178; *Teply v. Mobil Oil Corp.,* 859 F.2d 375, 379 (5th Cir.1988).

9. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552; *Dunn v. State Farm Fire & Cas. Co.,* 927 F.2d 869, 872 (5th Cir.1991).

10. La.R.S. 51:1405, 1409 (1987).

11. *Omnitech Int'l, Inc. v. Clorox Co.,* 11 F.3d 1316, 1332 (5th Cir.1994), *Roustabouts, Inc. v. Hamer,* 447 So.2d 543, 548 (La.App. 1st Cir. 1984).

trade practice is "deceptive" when it amounts "to fraud, deceit, or misrepresentation." [12] Because the definition of "unfair or deceptive act or practice" is broad and subjective, courts have been given the province of determining on a case-by-case basis what actions violate the Act. [13]

■ The plaintiffs contend that since Brett knew his false claim to a profit interest in the Joint Venture would delay the advancement of the Joint Venture, interfere with the contractual relations between Nass and Shaw and, because of its potential nuisance value, possibly result in a brokerage payment higher than the amount agreed to by the defendants, Brett's conduct embodied malicious, intentional, unscrupulous, deceitful, coercive and manipulative acts in violation of the Act.

The defendants set forth three basic reasons why summary judgment is proper with regard to the plaintiffs' LUTPA claim: (1) LUTPA grants no relief for mere negligence and/or inadvertence as has been pleaded by the plaintiffs, (2) the plaintiffs are not within the class protected by LUTPA, and (3) the underlying suit is more akin to a brokerage contract dispute than one for practices which resulted in unfair competition.

Although the defendants correctly state that LUTPA does not provide relief for negligence and/or inadvertence, [14] the plaintiffs' LUTPA claim is not based solely on the defendant's negligence. To the contrary, the plaintiffs set forth in their complaint that Brett and Comex acted in bad faith and/or in a manner intended to deceive and coerce plaintiffs into paying exorbitant brokerage fees. Accordingly, the defendants' argument that summary judgment is proper because LUTPA does not recognize a cause of action based on negligence and/or inadvertence is without merit.

Notwithstanding the fact that the defendants' first argument for summary judgment failed, the Court finds the defendants' other arguments for summary judgment persuasive.

The plaintiffs are not members of the class of plaintiffs sought to be protected by LUTPA. LUTPA has been construed to give protection to two groups of potential plaintiffs: consumers and business competitors. [15] Although the plaintiffs concede that they are not business competitors with the defendants, [16] they maintain that they are consumers within the meaning of the Act because they "consumed" the defendants' brokerage services. However, a closer look at the meaning of the term "consumer" reveals that the plaintiffs are not consumers as that term is used in LUTPA.

As defined by the Act, a "consumer" is "any person who uses, purchases, or leases goods or services." [17] This, without more, would include the plaintiffs. However, the Act gives further guidance as to which consumers are protected by its provisions by defining a "consumer transaction" as "any transaction involving trade or commerce to a natural person, the subject of which is primarily intended for personal, family, or household use." [18] Clearly, the purchase of brokerage services for the formation of an international Joint Venture is not covered by the Act's prohibitions. Moreover, in *Orthopedic & Sports Injury Clinic v. Wang,* [19] the Fifth Circuit recognized that the "consumer transaction" definition functions as a limit on

**12.** *Monroe Medical Clinic, Inc. v. Hospital Corp. of Am.,* 622 So.2d 760, 763 (La.App. 2d Cir. 1993).

**13.** *Omnitech,* 11 F.3d at 1332; *Roustabouts,* 447 So.2d at 548.

**14.** *Turner v. Purina Mills, Inc.,* 989 F.2d 1419, 1422 (5th Cir.1993).

**15.** *Orthopedic & Sports Injury Clinic v. Wang,* 922 F.2d 220, 225–26 (5th Cir.1991); *W.A. Offshore Equip. Co. v. Parmatic Filter Corp.,* 767 F.Supp. 125, 126 (E.D.La.1991); *Davis v. Manpower Int'l, Inc.,* 623 So.2d 946 (La.App. 4th Cir.1993). *But see Jarrell v. Carter,* 577 So.2d 120 (La.App. 1st Cir.1991).

**16.** Pls.' Mem.Opp.Summ.J. at 11.

**17.** La.R.S. 51:1402(1).

**18.** La.R.S. 51:1402(3).

**19.** 922 F.2d 220 (5th Cir.1991).

the class of plaintiffs potentially protected by the Act.[20]

Although the plaintiffs contend that Brett and Comex breached the oral contract entered into on March 10, 1993, by Brett's failure to return and execute a written brokerage agreement, the plaintiffs argue that their claim under LUTPA is more than just a simple breach of contract dispute. Specifically, the plaintiffs assert that it is the deceitful, coercive, manipulative, and intentional misrepresentations of Brett and Comex that form the basis for their action.

The Fifth Circuit's review of Louisiana case law in *Turner v. Purina Mills, Inc.*[21] is instructive regarding the kind of behavior LUTPA aims to punish. The Fifth Circuit concluded that it "is the breach of a special relationship of trust between the employer and employee" that offends the Act.[22] Like the special relationship which exists between an employer and employee, there is a special relationship between the plaintiffs and defendants in the case *sub judice*—namely the relationship between principal and agent (broker). However, unlike the case now before this Court, the LUTPA violations analyzed by the Fifth Circuit were committed by employees in the context of unfair or deceptive competition, not by employees situated as consumers.[23] This contrast differentiates the situation before this Court in which the plaintiffs have conceded that they are not in competition with the defendants. Thus, even should the plaintiffs be deemed "consumers"

within the Act's provisions, the factual surroundings of this case are far different from those in which Louisiana courts recognize a cause of action under LUTPA.

In sum, because of the relationship between the parties and the nature of the disagreement, the Court concludes that this suit is more analogous to a breach of contract dispute than one involving unfair or deceptive acts.[24] Therefore, since the Fifth Circuit has explicitly stated that LUTPA does not provide an alternate remedy for breach of contract,[25] summary judgment is proper.

The plaintiffs also argue that summary judgment would be improperly premature at this time because substantial factual discovery relative to their unfair trade practice claim needs to be conducted. Because the Court's ruling is based on issues of law, additional discovery is not required on the issues presented by the defendants' motion.[26]

## IV. TORTIOUS INTERFERENCE WITH CONTRACT

■ The cause of action for tortious interference with contract was first recognized in Louisiana in the landmark case of *9 to 5 Fashions, Inc. v. Spurney.*[27] In *Spurney*, the Louisiana Supreme Court overruled the longstanding case of *Kline v. Eubanks*[28] insofar as that case and its progeny conflicted with its new decision.[29] Prior to *Spurney*,

---

20. *Wang*, 922 F.2d at 225–26. *See also Kenny Enter., Inc. v. Balfour Beatty De Venezuela*, No. 93–1630, 1994 WL 179976 (E.D.La. April 28, 1994), *Surface Preparation and Coating Enter., Inc. v. Martin Marietta Manned Space Sys.*, No. 91–4401, 1992 WL 193478 (E.D.La. July 31, 1992). *But see Barrios v. Associates Commercial Corp.*, 481 So.2d 702 (La.App. 1st Cir.1985).

21. 989 F.2d 1419 (5th Cir.1993).

22. *Turner*, 989 F.2d at 1422.

23. The LUTPA violation that is most often litigated in the employer-employee relationship arises when an employee gains "access to privileged information regarding the employer's particular business practices, methods of production, names of customers, and so forth" and attempts to use this information for his own individual advantage while situated as a competitor to his former employer (e.g. stealing mailing lists). *Turner*, 989 F.2d 1419, 1422 (5th Cir.1993).

24. *Turner*, 989 F.2d at 1422.

25. *Turner*, 989 F.2d at 1422. The Fifth Circuit also noted that there is a big difference between a breach of contract claim and the egregious behavior prohibited by the LUTPA. *Turner*, 989 F.2d at 1422.

26. In granting summary judgment on the plaintiffs' LUTPA claim, the Court makes no final judgment that the defendants conduct was proper. The issue of whether the defendants actually committed fraudulent acts was not decided by this Court.

27. 538 So.2d 228 (La.1989).

28. 109 La. 241, 33 So. 211 (1902).

29. *See* Glenn G. Morris, *Personal Liability for Corporate Participants Without Corporate Veil–Piercing: Louisiana Law*, 54 La.L.Rev. 207, 247–60 (1993) for a detailed discussion and interpre-

*Kline* *had stood for over 87 years as establishing an absolute bar to any action based on tortious interference with contract unless the means used were unlawful.* The *Spurney court ruled that*

> an officer of a corporation owes an obligation to a third person having a contractual relationship with the corporation to refrain from acts intentionally causing the company to breach the contract or to make the performance more burdensome, difficult or impossible or of less value to the one entitled to performance, unless the officer has reasonable justification for this conduct. The officer's action is justified, and he is entitled to a privilege of immunity, if he acted within the scope of his corporate authority and in the reasonable belief that his action was for the benefit of the corporation.[30]

While recognizing a cause of action for tortious interference with contract, the *Spurney* court expressly stated that its holding was a limited exception to the historical bar.

> It is not our intention, however, to adopt whole and undigested the fully expanded common law doctrine of interference with contract, consisting of "a rather broad and undefined tort in which no specific conduct is proscribed and in which liability turns on the purpose for which the defendant acts, with the distinct notion that the purposes must be considered improper in some undefined way."
>
> .  .  .  .  .
>
> In the present case we recognize . . . only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person.[31]

In addition, although the Louisiana Supreme Court has never expressly precluded a cause of action for tortious contractual interference based on other facts, it has indicated that it would proceed cautiously in expanding that cause of action.[32]

Notwithstanding the limited nature of the tortious interference with contract cause of action under Louisiana law, the plaintiffs advance two theories to support the viability of its claim. First, the plaintiffs' maintain that the defendants' actions which interfered with their contract amount to a violation of LUTPA and, being illegal, fall within an exception to the general bar to tortious contractual interference claims. Specifically, the plaintiffs refer to the holding in *Kline* which states that no action will lie for tortious interference with contract by means which are not otherwise unlawful.[33] The plaintiffs maintain that this "otherwise unlawful" exception survived the *Spurney* holding and provides the foundation for their cause of action.[34] Second, the plaintiffs' argue that even if the defendants did not violate LUTPA, its claim is legitimate because it falls within the framework established by *Spurney* and subsequent court decisions to determine when a claim for tortious interference with contract is cognizable.

With regard to the plaintiffs' first contention, the Court determined in section III of this opinion that the defendants' conduct did not violate LUTPA. Thus, a claim for tortious interference based upon a violation of LUTPA is without merit. Because the plaintiffs do not allege other acts which suggest that the defendants acted illegally, the Court cannot determine at this time whether the plaintiffs' claim falls within the "otherwise unlawful" exception established in *Kline.*[35]

---

tation of *9 to 5 Fashions v. Spurney*, 538 So.2d 228 (La.1989) and tortious interference with contract.

**30.** *Spurney*, 538 So.2d at 231 (quoting W. Prosser & P. Keeton, The Law of Torts § 129, at 979 (5th Ed.1984)).

**31.** *Spurney*, 538 So.2d at 234.

**32.** *Great S.W. Fire Ins. Co. v. CNA Ins. Cos.*, 557 So.2d 966, 969–70 (La.1990).

**33.** *Kline*, 109 La. 241, 33 So. 211 (1902); *Spurney*, 538 So.2d at 232; *American Waste & Pollu-*

*tion Control Co. v. Browning–Ferris, Inc.*, 949 F.2d 1384, 1387 (5th Cir.1991).

**34.** *Spurney*, 538 So.2d at 232.

**35.** It should be noted that this Court failed to find any cases addressing this "otherwise unlawful" exception to the traditional bar against tortious contractual interference claims and does not determine at this point whether this exception survived *Spurney*. In a similar context, however, the Fifth Circuit addressed the relationship between tortious interference with contract and the LUTPA. Specifically, in *American Waste*

Considering the evidence now before the Court and the plaintiffs suggestion that additional discovery may reveal more facts relating to the defendants' misconduct, the Court believes summary judgment is improper on this issue at this time.

The plaintiffs' second reason in support of its tortious interference claim is meritorious because, as mentioned, the Louisiana Supreme Court has not foreclosed the expansion of that cause of action on the basis of other facts.[36]

In *American Waste & Pollution Control, Co. v. Browning–Ferris,*[37] the Fifth Circuit noted that the "common thread in *Spurney* and its progeny [was] the requisite duty, or obligation, for such a cause of action; a duty must exist for recovery of damages under Louisiana law, pursuant to article 2315."[38] The plaintiffs assert that, like *Spurney,* there exists the requisite duty or obligation required to trigger the tortious interference with contract cause of action, but, unlike *Spurney,* the defendants in this case breached that duty intentionally.[39]

The plaintiffs correctly state that as brokers, Brett and Comex owe a fiduciary duty to their clients not to profit at their client's expense and also to communicate accurate information to their principals.[40] Therefore, after considering the memoranda filed and the parties' oral arguments, the Court determines that summary judgment against the plaintiffs on their claim of tortious interference with contract is not proper at this time.

## V. CONCLUSION

The Court finds that summary judgment as to the plaintiffs' unfair trade practice claim is proper as a matter of law. However, the defendants' motion for partial summary judgment as to the plaintiff's claim for tortious interference with contract is denied.

By granting summary judgment on the plaintiff's LUTPA claim, the Court does not determine that the defendants' conduct did not involve fraudulent or otherwise intentional acts which may constitute a breach of a fiduciary duty.

Additionally, by denying summary judgment on the plaintiffs' tortious interference with contract claim, the Court does not imply that the plaintiffs' action is cognizable under Louisiana law. The Court merely refuses to grant summary judgment at this point in the litigation. The defendants' right to re-urge summary judgment after further discovery is specifically reserved.

Therefore:

**IT IS ORDERED** that the defendants' motion for partial summary judgment as to the plaintiffs' claim under LUTPA be and it is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that the defendants' motion for partial summary judgment as to the plaintiff's claim for tortious interference with contract be and it is hereby **DENIED.**

---

& *Pollution Control, Co. v. Browning–Ferris, Inc.,* 949 F.2d 1384 (5th Cir.1991), the Fifth Circuit was asked to decide whether the LUTPA creates a duty to refrain from tortious contractual interference. The court, noting that "no Louisiana court ha[d] considered the relationship between the [LUTPA] and [intentional interference with a contract]," concluded that Louisiana courts would not recognize "tortious interference with contract as violative of the [LUTPA]." *Browning–Ferris,* 949 F.2d at 1392.

**36.** *Great S.W. Fire Ins.,* 557 So.2d at 969–70; *Browning–Ferris,* 949 F.2d at 1388.

**37.** 949 F.2d 1384 (5th Cir.1991).

**38.** *Browning–Ferris,* 949 F.2d at 1390.

**39.** Although the *Spurney* court recognized a cause of action for tortious interference with contract, it did not find the corporate officer liable because it concluded that he had not acted intentionally to interfere with the contract (the defendant's conduct was more akin to negligence which the court held is not actionable). *9 to 5 Fashions, Inc. v. Spurney,* 538 So.2d 228, 235 (La.1989).

**40.** The Pls.' Mem.Opp.Summ.J. at 17 (citing *Tahoe Corp. v. P & G Gathering Systems, Inc.,* 506 So.2d 1336 (La.App.2d Cir.1987) and *Josephs v. Austin,* 420 So.2d 1181 (La.App. 5th Cir.1982)).