MICHAEL E. KIRBY, Judge.
| j Plaintiffs, Cheramie Services, Inc. and Attecia Cheramie, appeal the granting of the Motion for Summary Judgment in favor of Shell Deepwater Production, Inc. (hereinafter “Shell”), the defendant.
In 1996, Attecia Cheramie founded Cheramie Services, Inc. (hereinafter “Cheramie Services”), a small company that provides services to the oil industry, especially labor and personnel to support offshore activities. Cheramie Services did business primarily with Shell.
Cheramie Services first supplied clerks to Shell’s Auger platform in the Gulf of Mexico in 1996. On or about August 12, 1997, Cheramie Services entered into a written contract with Shell “to furnish all tools, equipment, materials, labor and supervision in order to provide the furnishing of clerical support for buyer.” This contract was called the “Blanket Order Document” and was an agreement for Cheramie Services to provide labor for clerical support for any platform that needed it, not just the Auger platform. This contract was the standard agreement prepared and used by Shell with its independent contractors.
12At or about the same time that Shell sent Cheramie Services the blanket order agreement, Shell also sent Cheramie Services a contract that provided for Chera-mie Services to provide all the clerical services to the Auger platform. That contract defined its scope as follows:
THIS ORDER, INCLUDING “GENERAL CONDITIONS” AND “WORK ORDER CONDITIONS” ATTACHED, SHALL CONSTITUTE AN AGREEMENT BY CONTRACTOR TO FURNISH ALL TOOLS AND EQUIPMENT, MATERIALS (EXCEPT BUYER-FURNISHED MATERIAL), LABOR AND SUPERVISION IN ORDER TO PROVIDE FOR THE FURNISHING OF CLERICAL SUPPORT FOR BUYER’S AUGER TENSION LEG PLATFORM (TLP).
Shell notes that this six (6) page document does not contain any signatures, other than the username of Rhett Bailey[1] at the top. Plaintiffs argue that these pages formed part of the “Blanket Order Agreement” with Shell.
Cheramie Services placed two clerks on the Auger platform, Kenneth Ward and Kevin Kayes, who each worked fourteen-day shifts. They alternated their shifts so that one of them was always on the platform. The record contains no indication that Cheramie Services’ performance was anything less than satisfactory.
In January, 1998, without any warning or notice to Cheramie Services, Shell began paying Filco International, Inc. (hereinafter “Filco”) for services provided by Kenneth Ward and Kevin Kayes. For the purposes of this litigation, Kenneth Ward and Kevin Kayes attached affidavits that they voluntarily quit Cheramie Services and went to work for Filco. Filco is a *3 competitor of Cheramie Services. | ;iCheramie Services alleges Shell and Filco conspired to deprive Cheramie Services of its employees and contractual rights.
In the early part of 1998, Shell called Cheramie Services regarding a position for a logistics coordinator on another platform known as “Ursa.” Cheramie Services sent Mary Perez to One Shell Square in New Orleans to be interviewed for the position by several Shell employees including Floyd Guidry and Bobby Coker. Mary Perez testified that she was offered the position only if she agreed to work for Filco. Because Ms. Perez needed the job, she agreed to leave the employ of Cheramie Services and work for Filco.
On January 14, 1999, the plaintiffs, Cheramie Services, Inc. and Attecia Cher-amie, brought this action against Shell and Filco alleging several causes of action. Plaintiffs allege that defendants conceived and implemented a plan to enhance their respective businesses and competitive positions over the petitioners by misappropriating, stealing, and luring the petitioners’ employees away and by committing other acts to be proved at the trial. The petition also alleges misappropriation of trade secrets of Cheramie Services as well as breach of contract and violation of the Louisiana Unfair Trade Practices Act, La. R.S. 51:1401, et seq. (“LUTPA”)
Filco failed to file an answer in this matter, and on March 2, 2000, the plaintiffs obtained a default which was confirmed by judgment on September 5, 2000.
_J_!_On May 2, 2001, Filco paid plaintiffs a settlement sum in return for plaintiffs dismissing their suit against Filco.
On March 16, 2007, the trial court held a hearing on Shell’s Motion for Summary Judgment and granted a partial dismissal based on all causes of action except the action for breach of contract. On May 18, 2007, the trial court granted Shell’s motion for summary judgment as concerns the breach of contract action and dismissed plaintiffs’ petition.
Plaintiffs argue the trial court erred in granting the motion for summary judgment finding that there was no breach of contract and that LUTPA did not apply.

DISCUSSION

At the appellate level, we conduct de novo review of summary judgments. Grant v. American Sugar Refining, Inc., 2006-1180 (La.App. 4 Cir. 1/31/07), 952 So.2d 746.
The first issue we must address is whether LUTPA applies to this case. LUTPA was enacted by the Louisiana Legislature in 1972. The Legislature modeled LUTPA after the Federal Trade Commission Act of 1914 (FTC Act), which set up a regulatory agency with broad powers to curb unfair or deceptive trade practices. In the 1950s, state legislatures began adopting “little FTCs” in an attempt to supplement the FTC in areas where the federal agency did not have the resources to enforce the federal act. While there is no private right of action under the FTC Act, most states, including Louisiana, have created a private right of 13action as part of them “little FTCs.” The Louisiana Legislature adopted the same broad language as that of the FTC Act and left the interpretation of this language and how it should apply to a private cause of action up to the courts.[2] A primary goal of LUTPA is to further the public interest by creating *4 an environment conducive to fair competition.[3]
Plaintiffs argue that the actions of Shell and Filco in misappropriating, stealing, and luring plaintiffs’ employees away amounted to unfair methods of competition and breached the contract between Shell and Cheramie Services.
La. R.S. 51:1405(A) provides that “[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.” The broad language of this statute necessarily requires a case-by-case determination of what constitutes an unfair trade practice. Roustabouts, Inc. v. Hamer, 447 So.2d 543 (La.App. 1 Cir. 1984). A practice is considered unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious to consumers, and consumers include business competitors. Roustabouts, 447 So.2d at 548.
La. R.S. 51:1409(A) provides a private right of action to “[a]ny person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405.”
RThe law requires the deceptive or unfair act to be one in the course of trade or commerce. La. R.S. 51:1402(9) defines “trade” or “commerce” as “the advertising, offering for sale, sale, or distribution of any services and any property, corporeal or incorporeal, immovable or movable, and any other article, commodity, or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of the state.”
The present case deals with the letting out of labor or industry that is governed by La. C.C. arts. 2475 et seq. More specifically, plaintiffs were -leasing employees to Shell. Applying the above statutes to the case at hand, we find plaintiffs business arrangement with Shell amounts to the distribution of any services within the definition of “trade” or “commerce” as set forth in La. R.S. 51:1402(9).
Shell argues that the class of persons who have a private right of action under LUTPA is limited to “consumers,” and “business competitors.” Gil v. Metal Serv. Corp., 412 So.2d 706 (La.App. 4 Cir.1982). In Gil, this Court denied an employee a remedy under LUTPA because he was neither a consumer nor a business competitor, based upon two prior decisions, stating:
However, this statute has been construed to give protection only to consumers and business competitors. National Oil Service of Louisiana v. Brown, 381 So.2d 1269 (La.App. 4th Cir.1980), reh. den. 1980; Reed v. Allison & Perrone, 376 So.2d 1067 (La.App. 4th Cir.1979). Gil is not a member of one of the protected classes; he does not have a cause of action under this statute. The trial court’s decision is correct.
Gil, supra, 412 So.2d at 707.
|7La. R.S. 51:1402(1) defines “consumer” as “any person who uses, purchases, or leases goods or services.” In the instant case, plaintiffs do not purport to be a “consumer” or a “business competitor” of Shell. However, plaintiffs have alleged that Filco and Shell conceived and implemented a plan to enhance their respective businesses and competitive positions over plaintiffs by, inter alia, misappropriating, stealing, and luring its employees away. In other words, plaintiffs allege a conspira *5 cy between Filco (plaintiffs’ business competitor) and Shell.
In Strahan v. Louisiana, 93-0374, p. 6 (La.App. 1 Cir. 8/25/94), 645 So.2d 1162, 1165, the First Circuit accepted the conspiracy theory in the context of LUTPA. Therein, the court stated:
Mr. Strahan is a competitor of Roshto, which he alleges conspired with New South, Service Merchandise, Roekhold and the Department to cause him to suffer an ascertainable loss of money as a result of the use of unfair or deceptive trade practices. Louisiana Civil Code article 2324(A) provides:
He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
If a conspiracy is conceived and executed, and a private injury results, the one so injured has a right of action against all of the conspirators. The action is for damages caused by acts committed pursuant to a formed conspiracy, rather than by the conspiracy itself. (Emphasis added.) Miller v. Keating, 339 So.2d 40, 43 (La.App. 3rd Cir.1976), writ granted, 341 So.2d 901 (La.), affirmed and amended, 349 So.2d 265 (La.1977); Tabb v. Norred, 277 So.2d 223, 227 (La.App. 3rd Cir.), writ denied, 279 So.2d 694 (La.1973); Louisiana v. McIlhenny, 201 La. 78, 9 So.2d 467, 472 (1942); See also Cassidy v. Holliman & Spiers, 13 La.App. 468, 126 So. 733, 735 (La.App. 1st Cir.1930).
When a tort is perpetrated through the instrumentality of a combination or conspiracy, the party |swronged or injured may look beyond the actual participants in committing the injury and join with them, as defendants, all who cooperated in, advised, or assisted in the accomplishment of the common design. ... Rush v. Town of Farmerville, 156 La. 857, 101 So. 243, 247 (La.1924).
In Roustabouts, Inc. v. Hamer, 447 So.2d 543 (La.App. 1st Cir.1984), plaintiff corporation brought suit against a competitor company, Nobles Construction, Inc., and individual named defendants who were officers, shareholders, directors and employees of the plaintiff corporation who, plaintiff alleged and the trial court found, conspired to engage in acts and practices which resulted in economic injury to the plaintiff corporation in violation of the UTPA. This court in Roustabouts found that the trial court had correctly applied the UTPA to the facts of that case.
In the case sub judice, because Mr. Strahan alleges “a scheme of unfair trade practice by all the defendants, who acted in bad faith against the plaintiff, as a direct attempt to avoid having to pay plaintiff the real estate commission on the sale of the building,” he has alleged a cause of action against all of them under the UTPA. The trial court could not decide the factual issue of conspiracy vel non on a summary judgment. Therefore, we find that the UTPA does apply to Mr. Strahan’s case under the facts alleged and we therefore reverse the trial court on that basis for granting the summary judgment.
The Fifth Circuit followed Strahan in Camp, Dresser & McKee, Inc. v. Steimle and Assoc., Inc., 94-547, pp. 7-8 (La.App. 5 Cir. 2/15/95), 652 So.2d 44, 48, and stated:
Sunbelt and Emmer argue that the unfair trade practices act does not apply to them because they are neither consumers or business competitors. However, we agree with the First Circuit Court of Appeal that anyone who conspires to injure a party’s competitor in violation of La.R.S. 51:1401 et seq. is *6 liable in solido with that party. See: Strahan v. Louisiana, No. 93-CA-0374 (La.App. 1st Cir.8/25/94) 645 So.2d 1162; Roustabouts, Inc. v. Hamer, 447 So.2d 543 (La.App. 1st Cir.1984). Here, there is a prima facie showing that Sunbelt and Emmer conspired with Steimle, to injure CDM, who is Steimle’s business competitor.
loin Southern Tool & Supply, Inc. v. Beerman Precision, Inc., 2003-0960, pp. 4-5 (La.App. 4 Cir. 11/26/03), 862 So.2d 271, 276, this Court also applied LUTPA in the context of a defendant acting in concert with the plaintiffs business competitor, stating as follows:
The conduct of Black & Decker, Beer-man Precision, and Industrial Welding constitutes a violation of the Louisiana Unfair Trade Practices Act (LSA-R.S. 51:1401) [(“LUTPA”)]. As a business competitor of Beerman and Industrial Welding, Southern Tool has standing to maintain an action for damages caused by the cancellation of its distributorship. The economic pressure brought jointly by Beerman and Industrial Welding to cause the cancellation of Southern Tool’s distributorship constitutes an unfair trade practice. Black & Decker is liable for acting in concert with Beerman and Industrial Welding to deprive Southern Tool of its rights as a distributor of DeWalt products.
As a result of the conspiracy of Beer-man, Industrial Welding, and Black & Decker, competition in the sale and service of DeWalt products has been suppressed in the Greater New Orleans area.
Under the reasoning of Strahan, Camp, Dresser, and Southern Tool, we find plaintiffs made a prima fame showing that Shell conspired with Filco to injure plaintiffs, bringing their action within the ambit of LUTPA. Accordingly, the trial court erred in granting Shells motion for summary judgment regarding plaintiffs LUT-PA claim.
Insofar as the breach of contract claim is concerned, we note that the second document appears to be faxed and is not signed. Plaintiffs argue this document was a part of the blanket order agreement. Even if it did form part of the agreement, it did not make Cheramie Services the exclusive provider nor did it guarantee any volume of business to Cheramie Services.
| mMore noteworthy, though, is the fact that plaintiffs employees were at will employees. Thus, when they decided to leave the employ of Cheramie Services, there was no contractual right to prevent them from doing so. Therefore, we find the trial court did not err in granting Shells motion for summary judgment as regards the breach of contract claim.
For the aforementioned reasons, we affirm the trial courts granting of Shells motion for summary judgment on the breach of contract claim, and reverse the trial courts granting of the summary judgment dismissing plaintiffs LUTPA claim, and remand for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
BELSOME, J., concurs with reasons.
BELSOME, J., concurs with reasons.
|TI write separately to emphasize that the range of prohibited practices under LUTPA is extremely narrow. Turner v. Purina Mills, Inc., 989 F.2d 1419, 1422 (5th Cir.1993). What constitutes an “unfair trade practice” in Louisiana is decided on a case-by-case basis. Turner, 989 F.2d at 1422. “An ‘unfair trade practice’ is ‘a practice that is unethical, oppressive, unscrupulous, or substantially injurious.’ ” *7 Id. (quoting Bolanos v. Madary, 609 So.2d 972, 977 (La.App.1992). LUTPA does not prohibit the exercise of permissible business judgment, or appropriate free enterprise transactions. Turner, supra. In other words, “[t]he statute does not forbid a business to do what everyone knows a business must do: make money.” Id. Thus, it must be recognized that “[lousi-nesses in Louisiana are still free to pursue profit, even at the expense of competitors, so long as the means used are not egregious.” Id. (emphasis added). Because Shell’s conduct was so unscrupulous and egregious, and because Plaintiffs made a ■primei facie showing that Shell conspired with Filco to injure them, the reversal of the judgment dismissing Plaintiffs’ LUT-PA claim under these particular facts and circumstances is appropriate. Therefore, I respectfully concur.

. The username on said document is that of Rhett Bailey, who it appears was acting as Shell's agent. It appears the document was prepared digitally.

. Andrews, Keith E., Louisiana Unfair Trade Practices Act: Broad Language and Generous Remedies Supplemented by a Confusing Body of Case Law, 41 Loyola Law Review 759 (Winter 1996).

. Id., p. 776.